THE PEOPLE *ex rel.* John Johnson, Petitioner, *vs.* E. J. MURPHY, Warden, Respondent.

*Opinion filed February 20, 1913.*

1. CRIMINAL LAW—*a sentence denotes the action of a court.* A sentence denotes the action of a court of criminal jurisdiction declaring the consequences to a convicted person of the fact of guilt confessed or ascertained by verdict.

2. SAME—*the sentence is done away with by commutation.* A commutation is the substitution of a punishment of a lower degree for one of higher degree and does away with the sentence pronounced by the court.

3. SAME—*upon commutation of a death sentence the Governor may direct imprisonment in either penitentiary.* Upon the commutation of a death sentence to imprisonment for life the Governor may, in his discretion, direct imprisonment in either the penitentiary at Joliet or Chester, regardless of the fact that the statute specifies the particular penitentiary in which the prisoner shall be confined if sentenced to imprisonment by the court.

ORIGINAL petition for *habeas corpus.*

CHARLES TROUP, for petitioner.

W. H. STEAD, Attorney General, (C. F. MANSFIELD, of counsel,) for respondent.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

The petitioner, John Johnson, was convicted of murder at the October term, 1898, of the circuit court of Vermilion county and was sentenced to death. He was twice

reprieved, and on February 23, 1899, the day before the
expiration of his last reprieve, on his petition for a com-
mutation of his sentence to imprisonment for life, the Gov-
ernor ordered the sentence commuted to imprisonment in
the State penitentiary for life.  On the same day the Gov-
ernor issued his warrant commanding that John Johnson
be taken from the jail of Vermilion county and be deliv-
ered to the warden of the Illinois State Penitentiary at
Joliet, and that the said warden take him and confine him
in said penitentiary at hard labor for the remainder of his
natural life.  The petitioner was received at the peniten-
tiary under this warrant on March 6, 1899, and has ever
since been confined there.  At the last October term he
filed a petition for a writ of *habeas corpus* on the ground
that he could lawfully be imprisoned only in the peniten-
tiary at Chester, and that his detention by the warden of
the penitentiary at Joliet was therefore illegal.  The writ
was issued.  The warden has made a return showing the
foregoing facts, and the petitioner insists that he is enti-
tled to be discharged.  This claim is based upon section 11
of the act to locate, construct and carry on the Southern
Illinois Penitentiary, which is as follows:

"Sec. 11.  Whenever the said penitentiary is ready for
the accommodation and safe keeping of convicts, the said
commissioners, or a majority of them, shall certify that
fact to the Secretary of State, and thereupon the Secretary
of State shall notify all the judges of the circuit courts
and other courts having criminal jurisdiction, in the coun-
ties lying south of the following tier of counties, to-wit:
Iroquois, Ford, McLean, Tazewell, Peoria, Knox, Warren
and Henderson, and after such notice, all convicts sen-
tenced to the penitentiary in the counties aforesaid, shall
be committed to the penitentiary provided for by this act:
*Provided*, that the authorities in charge of the Southern
Illinois Penitentiary and the one at Joliet may, with the
approval of the Governor, make such exchange of prison-

ers from one building to the other as good discipline and the interest of the State may require: *And provided, further,* that the Governor may, from time to time, change the boundaries of the penitentiary districts in such manner as to make the size of the districts bear due proportion to the capacity of the prisons therein. When he deems such change to be necessary he shall certify the same to the Secretary of State, designating the counties which are to be changed from one district to the other; and thereupon the Secretary of State shall notify the judges and clerks of all courts having criminal jurisdiction in the counties affected by the change; and after such notice, all convicts sentenced to the penitentiary in such counties shall be committed to the prison of the district in which the county has been placed." (Hurd's Stat. 1911, p. 1753.)

Vermilion county is within the territory in which this section requires convicts sentenced to the penitentiary to be committed to the Southern Illinois Penitentiary. Had the petitioner been sentenced to the penitentiary by the court he must have been committed to the penitentiary at Chester. But he was not sentenced to the penitentiary. He was sentenced to be hanged, and there the action of the court ceased. The constitution confers upon the Governor the power to grant commutations after conviction of any criminal offense. A commutation is the substitution of a punishment of a lower degree for one of a higher degree. (*In the matter of Victor,* 31 Ohio St. 206.) Sentence denotes the action of a court of criminal jurisdiction declaring the consequences to a convict of the fact of guilt confessed or ascertained by verdict. (*Commonwealth v. Lockwood,* 109 Mass. 325.) The petitioner is in the penitentiary not by virtue of any sentence. The sentence was done away with by the commutation. The punishment he is now undergoing is by the command of the Governor and not because of the sentence. Imprisonment in the peniten-

tiary for life is a punishment authorized by law for the crime of murder. Where such punishment is imposed by the sentence of a court, the statute has fixed in which of the two penitentiaries of the State the imprisonment shall take place. Where the punishment is imposed by the Governor as a commutation of a sentence of death no attempt has been made to control his action as to the place of imprisonment, and he may direct the imprisonment in either penitentiary, in his discretion. The petitioner is therefore rightfully detained by the warden and will be remanded to his custody.

*Petitioner remanded.*