THE PEOPLE *ex rel.* H. E. Fullenwider, Petitioner, *vs.*
CHAUNCEY H. JENKINS, Director of Public Welfare
*et al.* Respondents.

*Opinion filed June 16, 1926.*

1. CONSTITUTIONAL LAW—*powers of one department of govern-ment cannot be exercised by another except as provided in consti-tution.* No person or collection of persons constituting one of the three departments into which the powers of government are divided by the constitution may exercise any power properly be-longing to either of the other departments except as expressly directed or permitted by the constitution itself.

2. CRIMINAL LAW—*Governor cannot change conviction of mur-der to manslaughter.* The Governor, in commuting a sentence, can not change a conviction of the crime of murder to that of man-slaughter, as the conviction is a declaration of the court in a judicial proceeding, and the Governor is not vested with judicial authority to convict any person of crime or to change a conviction of one crime to that of another.

3. SAME—*what is the commutation of a sentence.* Commuta-tion of a sentence is the change of the punishment to which a pris-oner has been condemned into a less severe one and can be granted only by the executive authority having the pardoning power.

4. SAME—*when commutation of life sentence is ineffective and void—parole.* A commutation of the sentence of one convicted of murder "from life sentence to manslaughter" is ineffective and void because it cannot change the character of the crime, and if intended as imposing the sentence for manslaughter it can have no effect because it does not state any less punishment which is to be substituted for life imprisonment, as the sentence for man-slaughter may be for life or any number of years; and where the prisoner has not served twenty years such attempted commutation cannot authorize the granting of a parole by the Department of Public Welfare.

5. SAME—*a prisoner under life sentence for murder cannot be paroled before expiration of twenty years.* The Department of Public Welfare is without power to admit to parole a prisoner sentenced to life imprisonment for murder before the expiration of twenty years, as provided in the Parole law; and the Governor has no power to extend the benefit of the provisions of the Parole law to persons convicted of murder except as the act itself provides.

322–3

6. SAME—*revocation of parole does not preclude mandamus to compel expunging void order.* A writ of *mandamus* to compel the expunging from the record of a void order for the parole of one under life sentence for murder before the expiration of twenty years is not precluded by the revocation of the parole, where the executive department contends that by virtue of an attempted commutation of the sentence "from life sentence to manslaughter" the order was within the power of the department and that the prisoner is eligible to parole.

7. SAME—*exchange of prisoners between penitentiaries must be with approval of the Governor.* Under sections 11 and 12 of the Parole act the Department of Public Welfare may make such exchange of prisoners from one prison to another as good discipline and the interests of the State may require, but it must be done with the approval of the Governor and not upon the mere order of the director of Public Welfare.

ORIGINAL petition for *mandamus.*

H. E. FULLENWIDER, State's Attorney, and RUSSELL WHITMAN, for petitioner.

CHARLES F. MANSFIELD, for respondents.

Mr. JUSTICE DUNN delivered the opinion of the court:

Upon leave granted, a petition was filed at the last December term in the name of the People, on the relation of H. E. Fullenwider, State's attorney of Sangamon county, against Chauncey H. Jenkins, Director of Public Welfare, Will Colvin, Supervisor of Paroles, Charles P. Hitch, Charles W. McCall and W. W. Rhoades, assistants in the Department of Public Welfare, and John L. Whitman, warden of the Illinois State Penitentiary at Joliet, for a writ of *mandamus* commanding the respondents, officials of the Department of Public Welfare, to expunge from the record an order which had been entered for the parole of Ira D. Perry, Jr., who had been convicted of murder and sentenced to imprisonment for life in the Illinois State Penitentiary at Joliet, and commanding the warden to ap-

prehend and imprison him as required by the judgment of conviction. The respondents answered the petition, a demurrer was filed to the answer, which respondents moved to carry back to the petition, and the cause has been submitted on the demurrer and motion.

From the petition it appears that at the November term, 1921, of the circuit court of Cook county, Ira D. Perry, Jr., was indicted for the murder of William Schaller on February 17, 1921, and afterward, at the March term, 1922, he entered a plea of guilty, upon which he was adjudged guilty of murder and sentenced to confinement at hard labor in the penitentiary at Joliet for the term of his natural life and was later delivered to the warden of the penitentiary pursuant to the sentence. No writ of error was sued out to reverse the judgment, but on July 1, 1925, the following document signed by the Governor was filed with the Secretary of State:

"Upon the recommendation of the Division of Pardons and Paroles, I hereby commute the sentence of Ira D. Perry, Jr., from life sentence to manslaughter. At the March, 1922, term of the criminal court of Cook county, Judge M. L. McKinley presiding, Ira D. Perry, Jr., entered a plea of guilty to murder and was sentenced to life imprisonment in the Illinois State Penitentiary at Joliet."

The petition further alleges that afterward, on or about October 31, 1925, the Director of the Department of Public Welfare, the Supervisor of Pardons and Paroles and the assistants in the department, who are respondents, entered an order, or issued a permit purporting to be an order, allowing Ira D. Perry, Jr., to go upon parole outside of the penitentiary, subject to the conditions and benefits of the act of June 25, 1917, commonly known as the Parole law, and he was permitted to leave the custody of the warden and the penitentiary on October 31, 1925, and has ever since remained at large.

The answer of respondents admits the conviction and sentence of Perry, his confinement in the penitentiary and

the filing with the Secretary of State of the document which has been set out, which the answer denominates an "order of commutation of sentence," and alleges that on the same day there was issued out of the offices of the Governor and Secretary of State and delivered to the warden of the penitentiary the following commutation of sentence:

"STATE OF ILLINOIS, EXECUTIVE DEPARTMENT,
LEN SMALL, *Governor of Illinois*
"*To the Warden Illinois State Penitentiary.*

"GREETING: Whereas, Ira D. Perry, Jr., was convicted at the March term, A. D. 1922, of the criminal court of Cook county, of the crime of murder and was sentenced therefor to confinement in the penitentiary for the term of life, and whereas, it has been represented to me by divers good citizens of said county that said Ira D. Perry is a fit and proper subject for executive clemency,

"Now, know ye that I, Len Small, Governor of Illinois, by authority in me vested by the constitution of this State, do by these presents commute the sentence of the said Ira D. Perry, Jr., from life sentence to manslaughter.

"In testimony whereof I hereto set my hand and cause to be affixed the great seal of State. Done at the city of Springfield this 1st day of July A. D. 1925, and of the independence of the United States the 149th.

"By the Governor:          LEN SMALL, *Governor.*
(State Seal.)

LOUIS L. EMMERSON, *Secretary of State.*"

The answer alleges that thereafter Perry was held in the penitentiary by virtue of the original judgment and by virtue of the commutation to suffer the punishment for manslaughter; that at the August meeting, 1925, of the Division of Pardons and Paroles his application for parole was considered and taken under advisement, and at a special meeting of the Division of Pardons and Paroles on October 28, 1925, the parole of Perry was granted and appears of record in these words:

"Number 7910. Name Ira D. Perry, Jr. County Cook.
Crime manslaughter.
Action: Paroled. Application for out of State parole granted. To do parole in Iowa."

Thereupon an order of parole was transmitted to the warden of the penitentiary to permit Perry to depart from the penitentiary temporarily and conditionally, and he was permitted to leave the penitentiary conditionally on parole. The answer further alleges that afterward, on December 17, 1925, at a special meeting of the Division of Pardons and Paroles, the order of October 28, 1925, for his parole was revoked, and on his application to be transferred to the Southern Illinois Penitentiary at Menard such transfer was recommended, the record of such order being as follows:

"Number—7910  Name—Ira D. Perry, Jr.  County—Cook. Crime—Manslaughter.

Action:—Declared a violator.  Parole order entered October 28, 1925, revoked.  Transfer to Southern Illinois Penitentiary at Menard recommended."

Thereupon an order was made by the Director of Public Welfare reciting, among other things, the conviction of Perry of the crime of murder, his sentence to the Illinois State Penitentiary for life, and whereas "on the first day of July, A. D. 1925, said sentence was by the Governor of the State of Illinois commuted from the crime of murder to the crime of manslaughter, and whereas, the sentence became and was a term of from one year to life," directing that Perry be transferred from the Illinois State Penitentiary at Joliet to the Southern Illinois Penitentiary at Menard, and on the same day Perry was delivered to the warden of the Southern Illinois Penitentiary at Menard and is now held by virtue of the order of transfer.

Perry's conviction by the criminal court was of the crime of murder.  The respondents, as shown by the record of the Division of Pardons and Paroles, have acted on the theory that the executive action of the Governor changed the judgment of the court from the conviction of the crime of murder to a conviction of the crime of manslaughter.  The executive power does not reach to this extent.  By our constitution the powers of the government of this State are divided

into three distinct departments,—the legislative, executive and judicial,—and no person or collection of persons, being one of these departments, may exercise any power properly belonging to either of the others, except as expressly directed or permitted by the constitution itself. "Sentence" is "a judgment or judicial declaration made by a judge in a cause. The term judgment is more usually applied to civil and sentence to criminal proceedings." (Bouvier's Law Dict.) Sentence denotes the action of a court of criminal jurisdiction declaring the consequences to a convict of the fact of guilt confessed or ascertained by a verdict. (*Commonwealth* v. *Lockwood,* 109 Mass. 323; *People* v. *Murphy,* 257 Ill. 564.) Literally, to commute a life sentence to manslaughter is to commute the judgment of life imprisonment to the crime of manslaughter,—an expression which is meaningless. Whatever may have been the understanding of the chief executive, it was understood by the respondents as a change of the conviction from a conviction for murder to a conviction for manslaughter, for in their records before July 1, 1925, whenever the crime for which Perry was held in confinement is referred to it is as murder, but whenever it is referred to after July 1, 1925, in August, in October and in December, it is referred to as manslaughter, and in the answer it is averred that from July 1, 1925, Perry was held in the penitentiary by virtue of the original judgment of conviction and by virtue of the commutation of sentence to fulfill the punishment provided for manslaughter. Commutation is the change of a punishment to which a person has been condemned into a less severe one and can be granted only by the executive authority in which the pardoning power resides. (Bouvier's Law Dict.; *People* v. *Murphy, supra.*) The executive authority having the pardoning power may commute the punishment imposed by the sentence of a court to a lighter punishment, as from death to imprisonment for life or for a fixed time, or from imprisonment for life to im-

prisonment for a fixed time, or from imprisonment for a definite period to a shorter period. Such change of a judicial sentence by the executive is expressly permitted by section 13 of article 5 of the constitution, which vests the Governor with power to grant reprieves, commutations and pardons, after conviction, for all offenses, subject to such regulations as may be provided by law relative to the manner of applying therefor. The power of commuting sentences cannot, however, be vested in any other person, officer or body than the Governor. (*People* v. *LaBuy,* 285 Ill. 141.) The Governor is not vested with authority to convict a person of any crime or to change the conviction by a court of a person for a crime to a conviction for another crime. This is conceded by counsel for the respondents. If the act of the Governor be construed as intended to commute the punishment of life imprisonment imposed by the court to the punishment imposed by law for manslaughter, it cannot take effect as a commutation and did not authorize the granting of a parole by the Department of Public Welfare. By the Parole law, in all cases of conviction of any person over ten years of age for misprision of treason, murder, rape or kidnapping, if the punishment be imprisonment, the court is required to fix a definite term of imprisonment and the place of confinement, and persons sentenced for life may be eligible to parole at the end of twenty years. In all other cases every sentence to the penitentiary must be a general sentence of imprisonment, and the court does not fix the duration of it. No person sentenced under such general sentence can be eligible to parole until he shall have served the minimum term of imprisonment provided by law for the crime for which he was sentenced. The Department of Public Welfare is therefore without power to admit to parole a prisoner sentenced to life imprisonment for murder before the expiration of twenty years. The imprisonment provided by law for the crime of manslaughter is for life or for any number of years. The attempted com-

mutation was ineffective because it failed to state any less punishment which was to be substituted for life imprisonment. Using the words of the statute fixing the punishment for manslaughter the so-called commutation would read, "commuted from life sentence to imprisonment for life or for any number of years." Such attempted commutation was void because it could not change the character of the crime, and since it did not substitute any limit less than life for the termination of the imprisonment, the punishment was unaffected by it.

Perry was held under a sentence for a definite term of his life for murder. The so-called commutation, because of its uncertainty, is void and of no effect. He was still held under the sentence of life imprisonment. The Department of Public Welfare was without authority to let him go upon parole outside of the penitentiary, and its order was no justification for his release by the warden of the penitentiary.

The Parole act is an expression of the legislative will in regard to the government of the penal and reformatory institutions of the State and the control and discipline of the persons confined in them after conviction of crime. The persons and the crimes to which its provisions shall apply, the time and manner of their application and the means by which its provisions shall be put into operation and enforced are legislative questions. It is clear that the four crimes mentioned in the first section of the act, by reason of the serious nature of them, are placed in a class by themselves and subject to more severe conditions, in connection with the provisions of the act, than other crimes, and that such provisions are not available to persons convicted of those crimes except according to the first section and after imprisonment for the time mentioned in it. The executive has no power to extend the benefit of the provisions of the Parole act to persons convicted of murder except as the act itself provides.

After the filing of the petition the Department of Public Welfare revoked the so-called parole, and on Perry's petition an order was entered by the director for his transfer to the Southern Illinois Penitentiary at Menard and he was delivered to the warden of that penitentiary by the chief parole agent. It is claimed that under these circumstances it was a useless thing to grant the writ of *mandamus*. By this action the question has not, however, become a moot question. While the order complained of has been revoked it has not been expunged, and it is argued that it was within the power of the Department of Public Welfare to make it and that Perry was eligible to parole. It is still claimed that he is so eligible and his status and the power of the department are still in question. Moreover, the custody of Perry has been transferred from the Illinois State Penitentiary at Joliet to the Southern Illinois Penitentiary at Menard by an order of the director of the Department of Public Welfare. Sections 11 and 12 of the Parole act provide for the transfer of prisoners from one of the penal institutions of the State to another, but not from one penitentiary to another upon the mere order of the Director of Public Welfare. Section 11 of the act "to locate, construct and carry on the Southern Illinois Penitentiary," (Laws of 1877, p. 30,) provided that the authorities in charge of the Southern Illinois Penitentiary and the one at Joliet may, with the approval of the Governor, make such exchange of prisoners from one building to the other as good discipline and the interests of the State may require. Section 53 of the Civil Administrative Code provides that the Department of Public Welfare shall have power to exercise the rights, powers and duties vested by law in the commissioners, warden, deputy warden, chaplain, physician, steward, matron, turnkeys, watchmen and all other employees of the Illinois State Penitentiary at Joliet and of the Southern Illinois Penitentiary. The department may therefore make such exchange of prisoners from one prison to the other

as good discipline and the interests of the State may require, but it must be done with the approval of the Governor, and the record shows no such approval. The prisoner should be returned to the custody of the warden of the Illinois State Penitentiary at Joliet.

The motion to carry the demurrer back to the petition is overruled. The demurrer is sustained to the answer, and the writ of *mandamus* is awarded as prayed for.

*Writ awarded.*