(No. 51659.-

THE PEOPLE *ex rel.* BERNARD CAREY, State's Attorney, Petitioner, v. WILLIAM COUSINS, JR., Judge, *et al.,* Respondents.

*Opinion filed November 21, 1979.*

RYAN, J., GOLDENHERSH, C.J., and CLARK, J., dissenting.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Iris E. Sholder, Assistant State's Attorneys, of counsel), petitioner.

Ralph Ruebner of Chicago, and John H. Reid, of

Mt. Vernon, Deputy Defenders, and Robert E. Davison, of Springfield, Martin Carlson and Richard E. Cunningham, of Chicago, Verlin Meinz, of Ottawa, Charles M. Schiedel, of Springfield and Mark Schuster, of Elgin, Assistant Appellate Defenders, for respondent William Cousins, Jr.

Cornelius E. Toole, of Chicago, for respondent Ronald Brown.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Aaron L. Meyers, and John Thomas Moran, Assistant Public Defenders, of counsel), *amicus curiae*.

Roosevelt Thomas and Ákim Gursel, of Chicago, for *amicus curiae* Cook County Bar Association.

MR. JUSTICE WARD delivered the opinion of the court:

An information was filed in the circuit court of Cook County charging Ronald E. Brown with the murder, aggravated kidnapping, and armed robbery of Charles H. McGee. After a bench trial before William Cousins, Jr., a judge of that court, the defendant was found guilty on all charges. The People requested that a jury be convened to conduct a proceeding to determine whether the death penalty should be imposed on the conviction for murder, as provided by section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(d)). In response to a motion by the defendant, the trial court, on January 29, 1979, denied the request and entered an order holding section 9—1(d) unconstitutional.

The State filed a motion before us for leave to file a petition for a writ of *mandamus* directing the respondent Cousins to expunge his order and to conduct a sentencing proceeding, and the motion was allowed.

The public defender of Cook County and the Cook County Bar Association were each granted leave to file

briefs *amicus curiae.* Their briefs support the respondents.

The record of the trial court proceedings filed in the present action is not complete. It includes the criminal information and the order holding section 9—1(d) invalid, but does not contain any pretrial or post-trial motions or the rulings made, the testimony given at the trial, the judgments of conviction, or the petitioner's request for a sentencing hearing.

The basis for the trial court's holding section 9—1(d) invalid, as stated in its opinion, was that the section "vests the prosecution with unlimited discretion to trigger death sentence proceedings," and thereby permits the death penalty to be "wantonly and freakishly imposed." For this reason the section was viewed as contravening the due process clause, the prohibition of cruel and unusual punishments found in the eighth amendment to the Constitution of the United States and the separation of powers provision of article II, section 1, of the Constitution of Illinois.

Section 9—1(d) provides:

"Where requested by the State, the court shall conduct a separate sentencing proceeding to determine the existence of factors set forth in Subsection (b) and to consider any aggravating or mitigating factors as indicated in Subsection (c). The proceeding shall be conducted:

1. before the jury that determined the defendant's guilt; or

2. before a jury impanelled for the purpose of the proceeding if:

A. the defendant was convicted upon a plea of guilty; or

B. the defendant was convicted after a trial before the court sitting without a jury; or

C. the court for good cause shown discharges the jury that determined the defendant's guilt; or

3. before the court alone if the defendant waives a jury for the separate proceeding."

Since there was a bench trial in this case, we are

concerned here only with section 9—1(d)(2)(B) and section 9—1(d)(3), the latter being applicable if the defendant should waive a jury.

Section 9—1(d) is part of an amendatory act which became effective in 1977 (1977 Ill. Laws 70, sec. 1), following this court's holding in *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353, which invalidated earlier provisions relating to the imposition of the death penalty (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A).

Section 9—1 establishes a separate sentencing proceeding which must be employed before a death sentence may be imposed. For present purposes it is not necessary to set out its provisions in detail. In general, section 9—1(d) provides that the judge or jury, as the case may be, shall consider evidence of aggravating factors, which are enumerated in section 9—1(b), and mitigating factors, five of which are enumerated in section 9—1(c). Subsections (g) and (h) provide that the death penalty may be imposed only if the jury or the judge, as the case may be, finds that there were one or more aggravating factors and no mitigating factors sufficient to preclude imposition of a sentence of death.

We turn first to the claim that section 9—1(d) violates the separation of powers provision of the Constitution of Illinois in that the prosecutor is given power to exercise a part of the sentencing process, which should properly be a judicial function. It is this theory which appears to form the basis of the trial court's ruling, and it is advanced here by one of the *amici,* although not by the respondents, and although it was not included in the defendant's motion before the respondent Cousins.

The prosecutor of course does not himself impose the death sentence, nor can he require that it be imposed, for the judge or sentencing jury may conclude that the statutory conditions specified for the imposition of the death penalty have not been met. The present argument

focuses rather on the fact that no death sentence may be imposed at all without a sentencing proceeding, and that such a proceeding cannot take place unless it is requested by the prosecutor, in which case it becomes mandatory. If the prosecutor fails to request a sentencing hearing, he thus has precluded the imposition of a death sentence, and in that sense, it is argued, he has participated in the sentencing process.

We find no authority in the decisions of this court to support that theory, and we view it as ignoring the role of the State's Attorney as counsel for one of the litigants, the People. There are countless occasions in the trial of a criminal proceeding where a judicial ruling that is adverse to the defendant and may affect the ultimate outcome of the prosecution will not, and ordinarily cannot, be made unless a request for the ruling has been made by the prosecution. Examples range from the challenge of jurors to the tendering of instructions. Judicial rulings *sua sponte* are the exception, and it has never been supposed that in failing to make the challenge or tender the instruction the prosecutor was usurping a judicial function.

*People v. Bombacino* (1972), 51 Ill. 2d 17, *People v. Handley* (1972), 51 Ill. 2d 229, and *People v. Sprinkle* (1974), 56 Ill. 2d 257, *cert. denied* (1974), 417 U.S. 935, 41 L. Ed. 2d 239, 94 S. Ct. 2650, embody a view of the separation of powers provision of the Constitution opposed to that urged here. *Bombacino* involved a provision of the Juvenile Court Act (Ill. Rev. Stat. 1967, ch. 37, par. 702—7(3)) which authorized the State's Attorney to transfer a delinquency proceeding against a juvenile to a criminal court and thus permit the juvenile to be proceeded against as an adult under the provisions of the Criminal Code of 1961, in this case on a charge of homicide. By giving the State's Attorney the power to determine in which court the juvenile should be prosecuted, it gave him by the same token the power to increase

the severity of the sanction which might be visited upon the defendant for the offense with which he was charged.

The State's Attorney's decision was subject to being overruled by the chief judge of the circuit, but only in the event that the juvenile court judge objected to the removal. In *Bombacino* no such objection had been made. The defendant contended that due process required the juvenile court judge to hold a hearing on the removal petition. This court, contrasting the Illinois act with a District of Columbia statute dealing with the same subject matter, rejected that claim in the following language:

> "The statute involved in *Kent,* however, vested the discretion to waive jurisdiction over the minor in the juvenile court. The Illinois statute does not give the same discretion to the court. Rather the State's Attorney in Illinois is vested with the discretion to determine whether or not to proceed criminally against a juvenile offender, subject only to the right of the judge presiding in the juvenile division to object, in which event the matter is referred to the chief judge of the circuit court for his decision." (51 Ill. 2d 17, 20.)

While the constitutional provision immediately involved in *Bombacino* was due process rather than separation of powers, the decision necessarily presupposes that the determination made by the prosecutor is not to be regarded as a judicial act.

The removal of a juvenile from juvenile court for trial in criminal court, in this case on a charge of murder, was also the subject of *People v. Handley.* Among other arguments made against the constitutionality of the section of the Juvenile Court Act authorizing this procedure, one contention of the defendant, as described by the court, was that "vesting discretion in the State's Attorney to decide whether or not to remove a juvenile from the jurisdiction of the juvenile court without providing any

standards to limit his discretion deprives juvenile defendants of due process and equal protection under the law." (51 Ill. 2d 229, 232.) Following *Bombacino,* the court in *Handley* commented on this claim as follows:

"Historically, the office of the State's Attorney has involved the exercise of a large measure of discretion in the many areas in which State's Attorneys must act in the performance of their duties in the administration of justice. We do not find it constitutionally objectionable that the legislature has seen fit to grant discretion to the State's Attorney in removal matters under the Juvenile Court Act, particularly in view of the fact that the purposes of the Act as set forth in section 1–2 of the Act (Ill. Rev. Stat. 1969, ch. 37, par. 701–2) ***. We further conclude, as we did in *Bombacino,* that the due process hearing prescribed in *Kent* is not required at this stage of the proceedings in the juvenile court." 51 Ill. 2d 229, 233.

*Bombacino* and *Handley* were each cited in *People v. Sprinkle,* where the conviction of two juveniles indicted for murder and deviate sexual assault was sustained against the same constitutional objection. This court stated:

"We hold, therefore, that the Illinois legislature may reasonably vest in the State's Attorney the discretion of deciding whether the juvenile shall be prosecuted as an adult or juvenile offender. The guaranty of hearing found in the due-process clause of the fifth amendment to the United States Constitution had traditionally been limited to judicial and quasi-judicial proceedings. It has never been held applicable to the process of prosecutorial decision making. If it were so held, the prosecutorial function would be vitally impaired." (56 Ill. 2d 257, 261.)

The Juvenile Court Act has subsequently been amended so as to reduce the degree of prosecutorial discretion. (See *People v. Taylor* (1979), 76 Ill. 2d 289, 298-99.) That development does not, of course, disturb the conclusion reached in *Sprinkle* and its precursors with respect to the separation of powers issue.

*People v. Montana* (1942), 380 Ill. 596, cited by *amicus,* is not inconsistent with the decisions referred to above. As was pointed out in *People ex rel. Scott v. Israel* (1977), 66 Ill. 2d 190, 194, the distinctive aspect of *Montana* was that an administrative agency was given the power to disregard a judgment already pronounced by a court as to the minimum and maximum term of imprisonment. That is not the situation presented here. At most the role of the State's Attorney under section 9—1 could be characterized as requiring his consent before the court may proceed with the procedure for death sentencing. In this sense the situation resembles that in *People v. Phillips* (1977), 66 Ill. 2d 412. In that case we sustained a provision of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.8) which required the consent of a defendant's probation officer before the defendant could be allowed to avoid a pending criminal proceeding charging the unlawful possession of a controlled substance. See 66 Ill. 2d 412, 416.

The cases just referred to largely dispose of the respondents' further claim that the power of the State's Attorney to determine whether or not a sentencing hearing shall be held is left to his "unbridled discretion," and that section 9—1(d) thus violates due process. As the decisions of this court show, the State's Attorney has always enjoyed a wide discretion in both the initiation and the management of criminal litigation. That discretion includes the decision whether to initiate any prosecution at all, as well as to choose which of several charges shall be brought. See *People v. Rhodes* (1967), 38 Ill. 2d 389, 396; *People v.*

*McCollough* (1974), 57 Ill. 2d 440, *appeal dismissed* (1974), 419 U.S. 1043, 42 L. Ed. 2d 637, 95 S. Ct. 614; *People v. Brooks* (1976), 65 Ill. 2d 343, 349; *People v. Golz* (1977), 53 Ill. App. 3d 654, 658, 659, *cert. denied* (1978), 437 U.S. 905, 57 L. Ed. 2d 1134, 98 S. Ct. 3091; see also *Woodard v. Wainwright* (5th Cir. 1977), 556 F.2d 781, 784, *cert. denied* (1978), 434 U.S. 1088, 55 L. Ed. 2d 794, 98 S. Ct. 1285.

The respondents also urge that section 9–1(d) must be considered to violate the eighth amendment to the United States Constitution under the decision in *Furman v. Georgia* (1972), 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726. Their position is that the same element of potential arbitrariness and capriciousness in the sentencing process which led the Supreme Court to hold unconstitutional the Georgia statute before the court in that case infects the prosecutor's power to determine whether to set the sentencing procedure in motion.

A similar argument was made and rejected in *Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909, in which a conviction under the amended Georgia statute was upheld. Both the opinion of Mr. Justice Stewart, joined by Mr. Justice Powell and Mr. Justice Stevens, and the separate opinion of Mr. Justice White, in which the Chief Justice and Mr. Justice Rehnquist joined, express the view that the requirements imposed upon a sentencing body are not applicable to decisions by the prosecutor. Mr. Justice Stewart addressed the issue as follows:

> "First, the petitioner focuses on the opportunities for discretionary action that are inherent in the processing of any murder case under Georgia law. He notes that the state prosecutor has unfettered authority to select those persons whom he wishes to prosecute for a capital offense and to plea bargain with them. Further, at the

trial the jury may choose to convict a defendant of a lesser included offense rather than find him guilty of a crime punishable by death, even if the evidence would support a capital verdict. And finally, a defendant who is convicted and sentenced to die may have his sentence commuted by the Governor of the State and the Georgia Board of Pardons and Paroles.

The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. *Furman,* in contrast, dealt with the decision to impose the death sentence on a specific individual who had been convicted of a capital offense. Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution. *Furman* held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant." (428 U.S. 153, 199, 49 L. Ed. 2d 859, 889, 96 S. Ct. 2909, 2937.)

Mr. Justice White reached the same conclusion, as shown by the following excerpt from his opinion:

"Petitioner's argument that prosecutors behave in a standardless fashion in deciding which cases to try as capital felonies is unsupported by any facts. Petitioner simply asserts that since prosecutors have the power not to charge capital felonies they will exercise that power in a standardless fashion. This is untenable. Absent

facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts. Unless prosecutors are incompetent in their judgments, the standards by which they decide whether to charge a capital felony will be the same as those by which the jury will decide the questions of guilt and sentence. Thus defendants will escape the death penalty through prosecutorial charging decisions only because the offense is not sufficiently serious; or because the proof is insufficiently strong. This does not cause the system to be standardless any more than the jury's decision to impose life imprisonment on a defendant whose crime is deemed insufficiently serious or its decision to acquit someone who is probably guilty but whose guilt is not established beyond a reasonable doubt. Thus the prosecutor's charging decisions are unlikely to have removed from the sample of cases considered by the Georgia Supreme Court any which are truly 'similar.' If the cases really were 'similar' in relevant respects, it is unlikely that prosecutors would fail to prosecute them as capital cases; and I am unwilling to assume the contrary." 428 U.S. 153, 225, 49 L. Ed. 2d 859, 903, 96 S. Ct. 2909, 2949.

The respondents point out correctly that a prosecutor's discretion in deciding whether to request a sentencing hearing was not involved in *Gregg*, since under the Georgia statute a hearing is mandatory whenever a capital offense has been charged, and thus the only discretion given to the prosecutor is whether to charge such an offense. The respondents assert that the opinions in *Gregg* must be read as limited to that stage of proceedings. At that stage,

moreover, according to the respondents, discretion is not unguided, since it is limited by the statutory definition of a capital offense. In contrast, the argument runs, the only standard contained in section 9—1 is the enumeration of aggravating and mitigating factors, a standard which is directed solely to the sentencing body.

The distinction drawn by the respondents strikes us as unsound. Under the Georgia procedure the prosecutor's power to charge a capital offense is, of course, confined by the statutory definition of that offense. His decision whether to exercise that power remains discretionary, however, and that decision will depend upon his estimate of what testimony and other evidence will be available and its persuasive effect.

The same situation arises under section 9—1(d). Unless the State's Attorney believes that there will be testimony which will persuade the jury that the requisite elements for a death sentence exist, he is unlikely to request a hearing. His judgment, moreover, will be better informed than it can be under the Georgia procedure, for he need not make his final decision until after conclusion of the trial, when he will have evaluated the testimony and other evidence which was in fact presented.

The respondents also challenge section 9—1 on the following additional grounds: the information does not allege any of the aggravating factors enumerated in section 9—1(b); the sentencing body is not told what weight it is to give the various factors; the sentencing body is not required to make findings as to which factors were relied on; the judge is required to accept the recommendation of the sentencing jury; the State is not required to notify the defendant in advance of trial of its intention to seek the death penalty or of the particular aggravating factors on which it will rely.

These contentions are not appropriate for decision in the present proceeding. Subject to one qualification

regarding the final contention, these claims are all premature, since the sentencing hearing has not yet been held and the defendant has not yet been, and may never be, given a death sentence. *People v. Wills* (1975), 61 Ill. 2d 105, *cert. denied* (1975), 423 U.S. 999, 46 L. Ed. 2d 374, 96 S. Ct. 430.

As to the last contention it is claimed that unless the defendant knows in advance of trial whether the State will seek the death penalty he will be unable to make an intelligent decision as to whether he should enter into a negotiated plea of guilty, whether he should waive his right to a jury trial, and whether he should take the stand. On oral argument it was brought out that the State and the defendant disagree as to what representations were made by the State as to the death penalty. An original action of *mandamus* in this court is not appropriate for the determination of questions of fact. (*Cf. Touhy v. State Board of Elections* (1975), 62 Ill. 2d 303, 312.) Moreover, as noted earlier, the record before us does not contain either the pretrial proceedings or the trial itself. Since the respondents' contention cannot be resolved without the determination of factual matters on which the record is silent, that contention provides no basis for denying the writ.

For the reasons stated herein, a writ of *mandamus* shall issue directing the respondent Cousins to expunge the order entered January 29, 1979, and to hold a hearing to determine whether a death sentence should be imposed on the respondent Brown.

*Writ awarded.*

MR. JUSTICE RYAN, dissenting:

I have no argument with the concept of prosecutorial discretion as discussed in the majority opinion, and I do not quarrel with the cases cited therein in support thereof. However, in the statute under consideration, the prose-

cutor's discretion is injected into the sentencing stage of the proceedings, which, as indicated later, has consistently been held to be a judicial function. Furthermore, this is a stage of the proceedings which, as indicated in the cases cited below, the Supreme Court has not permitted the arbitrary exercise of discretion. In my opinion, the statute contains no guidelines to prevent the arbitrary exercise of discretion by the State's Attorney, which I perceive to constitute an eighth amendment violation. The Florida, Georgia and Texas statutes discussed in this dissent did not place in the prosecutor the discretion to determine whether or not a death penalty hearing should be held. I therefore find the quotations in the majority opinion from *Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909, which discusses prosecutorial discretion at other than the sentencing stage, to be of little help. I will discuss the eighth amendment issue later in this dissent.

The crucial part of section 9–1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9–1(d)) provides:

> "*Where requested by the State,* the court shall conduct a separate sentencing proceeding to determine the existence of factors set forth in subsection (b) and to consider any aggravating or mitigating factors as indicated in Subsection (c). \*\*\*" (Emphasis added.)

It is contended in this court by the respondent Brown that the vesting in the prosecutor of the discretion to conduct or not to conduct a sentencing hearing to determine if the death penalty shall be imposed confers upon the prosecutor the power to exercise a judicial function. This, it is argued, constitutes a violation of section 1 of article II of the Illinois Constitution of 1970, which provides:

> "THE POWERS OF THE STATE
> Section 1. SEPARATION OF POWERS
> The legislative, executive and judicial branches are

separate. No branch shall exercise powers properly be-
longing to another."

Article VI, section 1, of the Illinois Constitution of 1970
provides:

"Section 1. COURTS
    The judicial power is vested in a Supreme Court, an
Appellate Court and Circuit Courts."

I agree with this contention and would hold that section
9—1(d), which confers upon the prosecutor the discretion
to determine whether or not a sentencing hearing shall be
held, violates article II, section 1, of the Illinois Constitu-
tion of 1970. The respondent judge should not, for this
reason, be compelled to conduct a sentencing hearing
under section 9—1(d) of the Criminal Code of 1961.

The Illinois statute creates a bifurcated procedure in
which guilt and sentence are determined in separate
proceedings. (Ill. Rev. Stat. 1977, ch. 38, pars. 9—1(a)
through (h).) The defendant is first tried under an
indictment for murder. If he is found guilty, then the State
*may* request the court to conduct a death penalty hearing
before the judge or jury. If the sentencing authority finds
beyond a reasonable doubt that any one of seven
aggravating factors exists, then it must unanimously find
that there are no mitigating factors "sufficient to pre-
clude" capital punishment in order to impose the death
sentence. If the determination is made by a jury, it is
binding on the judge. Once imposed, the sentence is
automatically reviewable in this court. Ill. Rev. Stat. 1977,
ch. 38, par. 9—1(i).

Under the Illinois statute, the prosecutor is given
unlimited discretion in determining whether a sentencing
hearing should be conducted. There is no authority in the
statute for the court to call for such a hearing, and there is
no provision in the statute making such a hearing
mandatory under any given set of facts. In addition, under
the language of the statute the court has no authority to

decline the State's request for such a hearing.

The State has argued, and the majority finds, that a pretrial exercise of prosecutorial discretion in determining whether to prosecute for a particular crime based upon statutory definitions is no different than the post-conviction decision by the State determining whether or not a penalty hearing should be conducted. The majority opinion, in support of its position, relies heavily on previous decisions of this court involving the exercise of prosecutorial discretion in deciding whether a juvenile should be prosecuted as an adult or as a juvenile offender. I have no quarrel with those cases. The discretion considered there was exercised at a stage of the proceedings traditionally considered not to be reserved as a judicial function. This distinction was noted in *People v. Phillips* (1977), 66 Ill. 2d 412, which is also cited in the majority opinion. It is perfectly proper for the prosecutor to exercise discretion prior to the stage of the proceeding designated as a judicial function.

The power to define the conduct which constitutes a criminal offense and to fix the punishment for such conduct is vested in the legislature. (*People v. Williams* (1977), 66 Ill. 2d 179, 186; *People ex rel. Kubala v. Kinney* (1962), 25 Ill. 2d 491, 492-93; *People v. Burnett* (1946), 394 Ill. 420, 425.) However, the imposition of the sentence within the limits prescribed by the legislature is purely a judicial function. *People v. Montana* (1942), 380 Ill. 596, 608; see also *State v. Leonardis* (1977), 73 N.J. 360, 370, 375 A.2d 607, 612; *State v. Leggeadrini* (1977), 75 N.J. 150, 158-59, 380 A.2d 1112, 1116; *State v. Spinks* (1975), 66 N.J. 568, 575, 334 A.2d 23, 26; *Jackson v. United States* (D.N.J. 1971), 338 F. Supp. 7, 15; 5 Callaghan's Illinois Criminal Procedure sec. 38.20 (1971).

In *People v. Montana,* a 1941 amendment to the parole act (Ill. Rev. Stat. 1941, ch. 38, par. 801 *et seq.*), allowing the Division of Corrections to set the actual

sentence for a defendant after a judge's recommendation, was ruled invalid as an improper delegation of judicial power. In *People v. Phillips* (1977), 66 Ill. 2d 412, section 8(e) of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1973, ch. 91½, par. 120.8(e)) was challenged as constituting an infringement on the judicial power to sentence. The Act provided that a person on probation and charged with another crime could not be diverted into a drug-treatment program without the consent of his probation officer. This court held that "the authority granted to the probation officer to deny treatment under the Act to persons charged with, *but not convicted of,* a criminal offense does not infringe upon the court's constitutional right to impose sentence." (Emphasis added.) *(People v. Phillips* (1977), 66 Ill. 2d 412, 415-16.) Although the majority cites *Phillips* in support of its position, that case does not condone the exercise of prosecutorial discretion at the sentencing stage, but in fact recognizes that it is the court's constitutional right and duty to impose sentence, free from interference by the prosecutor. In *People ex rel. Martin v. Mallary* (1902), 195 Ill. 582, the court held that the General Assembly could not confer on the executive branch of the State government the authority to send to the penitentiary for a breach of discipline persons who had been committed to a reformatory. "We are of the opinion that such power is denied to the General Assembly by more than one provision of the constitution. The power so attempted to be conferred is judicial, and not executive or administrative." *(People ex rel. Martin v. Mallary* (1902), 195 Ill. 582, 593. See also *People ex rel. Johnson v. Murphy* (1913), 257 Ill. 564, 566; *People ex rel. Fullenwider v. Jenkins* (1926), 322 Ill. 33, 38; *Featherstone v. People* (1901), 194 Ill. 325, 334.) In *People v. Weeks* (1976), 37 Ill. App. 3d 41, it was contended that the court abused its discretion in failing to accept a guilty plea, "that in so doing the court exceeded its function in plea bargaining by

substituting its discretion for that of the State's Attorney. The law is clear in Illinois that sentencing is a judicial function, and it remains so in plea negotiations. Any agreements in plea negotiations are at most recommendations and the sentence to be imposed is for the court and the court alone." *People v. Weeks* (1976), 37 Ill. App. 3d 41, 44.

Clearly, the imposition of a criminal sentence is a judicial function. The legislature may authorize the court to exercise broad discretion in the imposition of sentences by providing for the fixing of sentences within prescribed minimum and maximum years. Or the legislature may restrict the exercise of judicial discretion in sentencing, such as by providing for mandatory sentences. However, once the legislature has presribed the punishment for a particular offense it cannot condition the imposition of the sentence by the court upon the prior approval of the prosecutor. Section 5—5—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3) provides the various sentences that may be imposed upon a person convicted of an offense. Death is one of the sentences provided if a person is convicted of murder. If the legislature may condition the imposition of the death penalty upon the prior approval of the prosecutor, then the legislature could condition the imposition of any of the dispositions authorized by the statute upon the prior consent of the prosecutor. The majority opinion states: "At most the role of the State's Attorney under section 9—1 could be characterized as requiring his consent before the court may proceed with the procedure for death sentencing." (77 Ill. 2d at 539.) This, of course, means that the judicial function of imposing the death sentence cannot be carried out unless the State's Attorney permits a sentencing hearing to be conducted. If the legislature can so condition the performance of this judicial function, it could also provide that, "where requested by the State, the

court shall conduct a hearing to determine whether or not a defendant may be sentenced to probation." Such an undesirable restriction could conceivably be imposed by the legislature in response to the indignation expressed by the media at an unpopular decision of a court in granting probation in a particular case. The possibility of such a curtailment of the courts' powers could severely hamper the performance of the judicial function in a manner mandated by article VI, section 1, of our constitution.

The separation of powers limitation on a prosecutor's exercise of a judicial function is illustrated by three recent decisions of the California Supreme Court. In that State, by reason of its constitutional history, the California Supreme Court held:

> "When the decision to prosecute has been made, the process which leads to acquittal or to sentencing is fundamentally judicial in nature." (*People v. Tenorio* (1970), 3 Cal. 3d 89, 94, 473 P.2d 993, 996, 89 Cal. Rptr. 249, 252.)

The court, in *Tenorio*, held that a statutory provision denying a judge the right to dismiss certain charges under the Health and Safety Code without prior approval of the prosecutor constituted an attempt to vest in the prosecutor the power to foreclose the exercise of an admittedly judicial power by an appropriate judicial officer. *People v. Tenorio* (1970), 3 Cal. 3d 89, 94, 473 P.2d 993, 996, 89 Cal. Rptr. 249, 252.

In *Esteybar v. Municipal Court* (1971), 5 Cal. 3d 119, 485 P.2d 1140, 95 Cal. Rptr. 524, the Supreme Court of California again stated:

> "Since a prosecutor may not be vested with authority to foreclose the exercise of a judicial power, we have concluded that requiring his consent to determine that an offense is a misdemeanor violates the doctrine of separation of powers ***." (*Esteybar v. Municipal Court*

(1971), 5 Cal. 3d 119, 122, 485 P.2d 1140, 1141, 95 Cal. Rptr. 524, 525.)

Article III, section 1 (now section 3), of the California Constitution, in language similar to that of article II, section 1, of the Illinois Constitution of 1970, provided:

> "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

The California court held in *Esteybar* that the exercise of the judicial function cannot be conditioned upon approval of either the executive or the legislative branches of government. In *Esteybar,* as in our case, it was contended by the State that the prosecutor's discretion under attack was but an extension of the prosecutorial discretion exercised in determining what crime is to be charged or if any crime is to be charged. The court stated that the argument overlooks the fact that the court's determination *follows* the district attorney's decision to prosecute. Citing *Tenorio,* the court quoted the language quoted above that the process which leads to acquittal or sentencing is fundamentally judicial in nature.

*People v. Superior Court* (1974), 11 Cal. 3d 59, 520 P.2d 405, 113 Cal. Rptr. 21, involved the validity of a statute similar to that considered by this court in *Phillips.* That statute gave to the district attorney the power to veto a decision of the trial judge to order a defendant who was charged with a narcotic offense to be diverted into a pretrial treatment program. The Supreme Court of California, relying on *Esteybar* and *Tenorio,* held that the disposition of the charge was a judicial function and the statute violated the separation of powers provision of the California Constitution.

The three California cases cited demonstrate that wherever the line between executive and judicial functions may be drawn, it is constitutionally impermissible for

the legislature to authorize the prosecutor to exercise a judicial function or to interfere with or foreclose the proper exercise of a judicial power. We need not in this case decide at what point the prosecutorial function ceases and the judicial function commences. Wherever that may be, the previous decisions of this court have established that the imposition of a sentence, following determination of guilt, is purely a judicial function. Any attempt by the legislature to confer upon the prosecutor authority to exercise any part of the sentencing function or the authority to limit, interfere with, or to condition the exercise of the judicial function upon a request by the prosecutor is a violation of the doctrine of separation of powers as contained in article II, section 1, of the Illinois Constitution of 1970.

As noted early in this dissent, I also consider that vesting the unlimited discretion in the prosecutor to request the court to conduct a death penalty hearing constitutes a violation of the eighth amendment to the Federal Constitution.

*Furman v. Georgia* (1972), 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726, rendered invalid most State death penalty statutes. Prior to *Furman,* the Supreme Court had not intimated that discretion in sentencing offended the Constitution. In that case, two justices (Brennan and Marshall) concluded that the eighth amendment prohibited the imposition of the death penalty. Three justices were unwilling to hold the death penalty *per se* unconstitutional. However, they voted to hold the statute invalid, concluding that discretionary sentencing, unguided by legislatively defined standards, violated the eighth amendment. They found that such unguided discretion permitted the death penalty to be imposed wantonly and freakishly. The variety of opinions supporting the judgment in *Furman* caused confusion as to what was required in order to impose the death penalty in accord with the eighth

amendment. (See *Lockett v. Ohio* (1978), 438 U.S. 586, 599, 57 L. Ed. 2d 973, 986, 98 S. Ct. 2954, 2962.) Nonetheless, many States reenacted death penalty statutes containing what they perceived to be the necessary procedural safeguards against the freakish and discriminatory imposition of the penalty. In this State our legislature responded by enacting a death penalty statute (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1A), which this court held invalid as violating both our State Constitution and the Federal Constitution. *People ex rel. Rice v. Cunningham* (1975), 61 Ill. 2d 353.

In *Lockett v. Ohio,* Mr. Chief Justice Burger, after summarizing the holdings of the opinions in *Furman,* commented on the post-*Furman* decisions, noting that the court had considered the eighth amendment issues posed by five of the post-*Furman* death penalty statutes. (*Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909; *Proffitt v. Florida* (1976), 428 U.S. 242, 49 L. Ed. 2d 913, 96 S. Ct. 2960; *Jurek v. Texas* (1976), 428 U.S. 262, 49 L. Ed. 2d 929, 96 S. Ct. 2950; *Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978; *Roberts v. Louisiana* (1976), 428 U.S. 325, 49 L. Ed. 2d 974, 96 S. Ct. 3001.) A majority of the court in the first three of the cited cases found the statutes to be valid, while a majority of the court found that the provisions of the statutes in the last two cited cases did not comply with eighth amendment requirements. In these cases, four justices took the position that all five of the statutes complied with the Constitution. Two justices, as in *Furman,* held that the death penalty *per se* violated the eighth amendment. The disposition of each of the five cases varied according to the votes of a plurality of three justices who delivered a joint opinion in each case upholding the constitutionality of the statutes of Georgia, Florida and Texas and holding the statutes in North Carolina and Louisiana invalid. Thus, the Chief Justice, in

his opinion in *Lockett v. Ohio,* looked to the reasoning of the opinions filed by the plurality in these five cases. Noting that "[t]he signals from this Court have not, however, always been easy to decipher" (*Lockett v. Ohio* (1978), 438 U.S. 586, 602, 57 L. Ed. 2d 973, 988, 98 S. Ct. 2954, 2963), he attempted to reconcile previously differing views in order to give the States the clearest guidance that the court could provide.

The *Lockett* opinion distilled from the nest of cases the idea that there is a qualitative difference between the death penalty and punishment in noncapital cases. Although legislatures remain free to decide how much discretion should be reposed in a judge or jury in noncapital cases, "[w]e are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio* (1978), 438 U.S. 586, 604, 57 L. Ed. 2d 973, 989, 98 S. Ct. 2954, 2964.

Death is different from other punishments, not in degree, but it is, in fact, a different kind of punishment. The action of the State in taking the life of one of its citizens differs dramatically from any other form of legitimate State action. From the point of view of the defendant, the penalty is different in both its finality and its severity. It is therefore of vital importance that any decision to impose the death penalty be, and appear to be, based on reason rather than caprice or emotion. (*Gardner v. Florida* (1977), 430 U.S. 349, 357-58, 51 L. Ed. 2d 393, 401-02, 97 S. Ct. 1197, 1204.) This drastic difference has caused the Supreme Court to conclude that "in capital cases the fundamental respect for humanity underlying the Eighth Amendment [citation], requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina* (1976), 428

U.S. 280, 304, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991.

In considering the plurality opinions in the five post-*Furman* cases cited above, it can be concluded that the death penalty is not *per se* violative of the eighth amendment, but the procedures outlined in the statutes for the imposition of the penalty may be such as to permit such an arbitrary imposition of the penalty that the statute is rendered invalid as violative of eighth amendment rights. The cases reasoned that, to comply with *Furman,* sentencing procedures should not create a substantial risk that the death penalty will be inflicted in an arbitrary or capricious manner. In the plurality's view, *Furman* does not require that all sentencing discretion be eliminated but only that it be directed and limited so that the death penalty would be imposed in a more consistent and rational manner, and so that there would be a meaningful basis for distinguishing the cases in which it is imposed from those in which it is not. (See *Lockett v. Ohio* (1978), 438 U.S. 586, 600-01, 57 L. Ed. 2d 973, 987-88, 98 S. Ct. 2954, 2963.) In light of the unique and drastic nature of the death penalty this court must carefully scrutinize the discretionary authority vested in the prosecutor by the provisions of section 9—1(d) of the Criminal Code of 1961, which provides:

> "Where requested by the State, the court shall conduct a separate sentencing proceeding ***." Ill. Rev. Stat. 1977, ch. 38, par. 9—1(d).

It should be noted that in the statutes of Georgia, Florida and Texas, approved by the Supreme Court in the cases cited above, no discretion was vested in the prosecutor as to whether or not a hearing would be held to determine if the death penalty should be imposed. The statutes provided for such a hearing in the event of conviction of specified felonies. Under our statute a sentencing hearing is neither required after certain convic-

tions, nor is the prosecutor directed as to when to seek the death penalty. The prosecutor has unlimited discretion, unaided by legislatively created directives, in the performance of this indispensable part of the sentencing function. This would appear to be clearly contrary to *Furman* and its progeny. The majority opinion in our case states that a similar argument was rejected in *Gregg v. Georgia,* noting that the opinions of that case, joined in by Mr. Justices Stewart, Powell, Stevens, White, Rehnquist, and the Chief Justice, "express the view that the requirements imposed upon a sentencing body are not applicable to decisions by the prosecutor." (77 Ill. 2d at 540.) Any such expression in *Gregg v. Georgia* has no application here, because under the statute in that case the prosecutor did not participate in the sentencing function. I maintain that if a death sentence can only be imposed if a sentencing hearing has been requested by the prosecutor, the exercise by him of discretion in requesting or not requesting such a hearing can lead to the arbitrary and freakish application of the penalty which was condemned by the Supreme Court. The exercise of this discretion by the prosecutor must therefore be governed by the requirements imposed upon the sentencing body by the Supreme Court.

Although the majority opinion seems to find adequate guidelines to direct the exercise of the discretion of the State's Attorney, it does not specify where these are found or what they are. The opinion simply states: "Unless the State's Attorney believes that there will be testimony which will persuade the jury that the requisite elements for a death sentence exist, he is unlikely to request a hearing." (77 Ill. 2d at 543.) With this statement I cannot agree. The statute contains both aggravating factors, in section 9–1(b), and mitigating factors, in section 9–1(c). At no place does the statute state that these factors are for the guidance of the prosecutor. In the statute these factors are specifically stated to be for the consideration of the court

and jury in determining whether the death penalty should be imposed. It is obvious that they were not intended to be for the guidance of the prosecutor because some of the mitigating factors of section 9—1(c) may not become known until the penalty hearing has been held. It may be true that some prosecutors, in making the decision whether or not to request a sentencing hearing, will consider both the offense and the offender, to the extent that such information is available. It is much more likely, however, that if any of the factors are considered, the prosecutor will consider only the aggravating factors of section 9—1(b), and that no consideration will be given to the individual offender in making the decision. In non-capital cases individualizing the penalty rests on sound sentencing policy and does not assume constitutional dimensions. However, because of the qualitative difference of the death penalty, the eighth amendment *requires* not only consideration of the offense, but also of the offender—"consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." (*Woodson v. North Carolina* (1976), 428 U.S. 280, 304, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991.) The prosecutor, in requesting the sentencing hearing, is necessarily involved in the sentencing function; that is, the process of inflicting the penalty of death.

In appraising the effect of the prosecutor's discretion, it must be remembered that the statute confers this discretion not upon one individual, but upon the State's Attorney in each of the 102 counties in this State. In view of the absence of statutory directives to the prosecutor, each State's Attorney is free to establish his own policy as to when sentencing hearings will be requested. Some prosecutors may look to sections 9—1(b) and 9—1(c) for guidance. Others may consider some of the listed factors controlling and disregard the remaining, while others may

totally ignore these sections. Such unguided discretion will inevitably lead to an arbitrary and capricious application of the death penalty similar to that condemned in *Furman*. There can be no doubt that under this statute some offenders will be chosen as candidates for the death penalty by one prosecutor, while other offenders with similar qualifications will be spared, not as a result of mercy, but because of the uneven application of the law due to the lack of statutory direction to the prosecutor. There will inevitably be cases where there will be no reasonable basis for the distinction between one on whom the penalty of death is imposed and another who is passed over. (See *Lockett v. Ohio* (1978), 438 U.S. 586, 600-01, 57 L. Ed. 2d 973, 987-88, 98 S. Ct. 2954, 2963.) There will be no reasonable explanation for the distinction between the two convicted offenders except that, because of the personal belief or office policy of one State's Attorney, one offender was chosen as a candidate for the penalty of death, whereas for similar reasons personal to another prosecutor, an equally culpable offender was spared.

The risk of arbitrary and capricious action under section 9—1(d) is most vividly demonstrated by the case of People v. Greer, Docket No. 51214, which was only recently argued before this court. In that case the prosecutor requested the penalty hearing, and the death penalty was imposed upon the defendant. At oral argument before this court, the Attorney General confessed error and stated that this is not a case in which the death penalty should be imposed. Furthermore, this court was informed in oral argument that the State's Attorney who had prosecuted the case is no longer in office and that his successor agrees with the Attorney General. Greer's case clearly shows that because of the lack of adequate guidelines the decision to request or not to request a penalty hearing will, to a great degree, depend upon the whim of the individual prosecutor. Without legislatively

enacted guidelines, the differences in prosecutors, though they be sincere in their beliefs, will inevitably lead to arbitrary and capricious action. Fortunately, this court is in a position to correct an unauthorized imposition of the death penalty. However, the statute may well be rendered arbitrary and capricious in its application by the fact that many prosecutors, in the exercise of unguided discretion, will not request a penalty hearing, whereas other prosecutors, faced with the same set of facts, will request such a hearing, and the death penalty may be imposed.

In *Gregg v. Georgia,* Mr. Justice Stewart stated:

"Because of the uniqueness of the death penalty, *Furman* held that it could not be imposed under *sentencing procedures that created a substantial risk* that it would be inflicted in an arbitrary and capricious manner ***.

***

*Furman* mandates that *where discretion is afforded a sentencing body* on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." (Emphasis added.) (*Gregg v. Georgia* (1976), 428 U.S. 153, 188-89, 49 L. Ed. 2d 859, 883, 96 S. Ct. 2909, 2932.)

Our statute contains no directions or guidelines to minimize the risk of wholly arbitrary and capricious action by the prosecutor in either requesting a sentencing hearing or in not requesting a sentencing hearing. The vague belief of the majority that the State's Attorney will not request such a hearing unless he believes that there will be evidence which will persuade a jury that the requisite elements for a death sentence exist is meaningless. Such belief, although the prosecutor may be sincere, will not "minimize the risk of wholly arbitrary and capricious action" unless the

exercise of discretion by the prosecutor is aided, directed and limited by guidelines prescribed by the legislature.

There are other infirmities in the statute which I consider significant. The most serious of these involves lack of notice to a defendant that a penalty hearing will be held. There is no requirement that the defendant, at any stage of the proceeding prior to or during the hearing to determine his guilt or innocence, be notified that the death penalty will be requested. If the accused is not notified prior to trial that the State will ultimately seek the death sentence, and if he is not advised of the aggravating factor or factors upon which the State will rely, the accused and his counsel will be unable to make intelligent decisions with regard to his defense. Such fundamental questions as whether the accused should stand trial before a jury or the court, whether he should testify in his own behalf or whether he should, in fact, bargain for a plea of guilty, may well be dictated by the severity of the potential penalty.

It is argued that the accused will know during the *voir dire* examination of the jury whether or not the death penalty will be sought since a defendant is allowed 20 peremptory challenges in a capital case. (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(e).) A capital case is one in which the death penalty may, but need not necessarily, be inflicted. (*People ex rel. Hemingway v. Elrod* (1975), 60 Ill. 2d 74.) Murder is a crime for which the death penalty may be iinflicted. The fact that an accused is allowed 20 peremptory challeges is a very uncertain and unsatisfactory indicator of what penalty will be sought, considering that fundamental defense decisions must be based thereon.

For the reasons stated above, I would hold that section 9—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(d)) is unconstitutional and that no valid sentencing hearing could be held thereunder.

In summary, that section confers upon the prosecutor, the executive branch of our government, the authority to exercise, interfere with and limit the sentencing function (a judicial power), in violation of article II, section 1, of the Illinois Constitution of 1970. I would also hold that section 9—1(d) violates the Federal Constitution eighth amendment requirements for the imposition of the death penalty as announced in the decisions of the Supreme Court cited herein. Also, I would hold that by failing to require that notice be given that the death penalty hearing will be requested, the statute denies to a defendant a fundamental element of due process.

GOLDENHERSH, C.J., and CLARK, J., join in this dissent.