THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSIE VEAL *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 81—800

Opinion filed November 23, 1982.

James J. Doherty, Public Defender, of Chicago (Judith A. Stewart, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Peter M. DeLongis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE PERLIN delivered the opinion of the court:

Defendants, Jessie Veal (Jessie) and his brother Willie Veal (Willie), were charged in a seven-count information with murder, attempted murder, aggravated battery and armed violence. In a bench trial, both defendants were found guilty of voluntary manslaughter. Jessie was also convicted of one count of aggravated battery. Jessie was sentenced to serve two concurrent terms of three years and four months in the Illinois Department of Corrections. Willie was sentenced to serve three years and four months on his conviction of voluntary manslaughter. Both defendants have appealed. On appeal, Jessie, who was represented by court-appointed counsel, contends that he

was unconstitutionally denied free investigative services; Willie contends that he was not proved guilty beyond a reasonable doubt of voluntary manslaughter. For the reasons hereinafter stated, we affirm both defendants' convictions.

The Public Defender's Office was initially appointed to represent both defendants. Because of a potential conflict of interests, however, the court, on February 11, 1980, appointed separate counsel for Jessie. The Public Defender's Office continued to represent Willie.

On May 6, 1980, Jessie's court-appointed counsel made a pretrial motion requesting the court to authorize funds for the hiring of an investigator to interview the State's witnesses. Counsel contended that he did not himself have the time or the resources to investigate the case, and he believed that Jessie would be prejudiced if he were not allowed to hire a special investigator. The judge denied this motion. On July 2, 1980, Jessie's attorney filed a written motion again stating that he had need of an investigator not only to interview the State's witnesses but also to locate and interview other possible occurrence witnesses. The judge refused to reconsider his earlier denial of Jessie's requests.

Subsequently, the case was transferred to a different judge for trial. At the conclusion of the State's case-in-chief, the trial court denied defendants' motions for directed findings. Jessie's attorney then moved orally to dismiss the information because of the prior judge's refusal to authorize funds for an investigator. After defendants were found guilty, Jessie's counsel, in a written post-trial motion, again moved to dismiss the information because of the court's refusal to provide him with funds for an investigator. The court denied the post-trial motion but the judge commented that in cases involving indigent defendants represented by court-appointed counsel, it would be a "better practice" to grant investigative funds.

At trial, the State's evidence showed that in the late afternoon of August 2, 1979, Jessie and his brother Willie met with Aubie McBeath (McBeath) and a man called "Fox" at the corner of St. Louis Avenue and Jackson Boulevard in Chicago. After a short discussion, McBeath agreed to sell some pills ("T's and Blues") to the Veals for $38. McBeath gave the money to Fox, and Fox left supposedly to get the pills. Fox failed to return, and McBeath told the Veals that Fox "ran off" with their money. When the Veals expressed anger, McBeath said he would take them to where Fox might be found.

McBeath, Jessie and Willie got into the car of Louis Veal (Louis), a cousin of the Veal brothers. Louis drove the three men to the intersection of Lawndale Avenue and Roosevelt Road to search for Fox.

There they met with Marion Luckett (Luckett), Lee Lattimore (Lattimore) and Steven Roebuck (Roebuck), friends of McBeath. An argument ensued when Luckett denied knowing the whereabouts of Fox.

At trial Luckett, Roebuck and McBeath all testified to the following: during the argument, Jessie put his hand behind his back and motioned as if he was pulling a gun on Luckett. Luckett asked Jessie why Jessie was making "a pistol play" and Lattimore explained that Jessie did not have a gun but he did have a knife. Luckett then crossed the street and picked up a brick.

Shortly thereafter, the police arrived and dispersed the group. After the police left, Jessie and Luckett resumed their argument. Jessie displayed a knife and pushed McBeath into Louis' car. Willie also struck McBeath over the head with a beer bottle. Jessie put his knife to McBeath's throat and told Willie to get the shotgun out of the car trunk. Luckett, Lattimore and Roebuck then approached the car and told McBeath to get out. McBeath jumped out of the car and began throwing bricks at the Veal brothers. Luckett, Roebuck and Lattimore also picked up some bricks and together with McBeath chased the Veal brothers east towards Independence Boulevard and Roosevelt Road. There they stopped, turned around and started to walk west towards Lawndale Avenue.

Luckett, Roebuck and McBeath testified that they looked back east and saw Jessie stabbing Lattimore with a knife. McBeath indicated that Jessie stabbed Lattimore on the left side and back whereas both Luckett and Roebuck stated that Jessie stabbed Lattimore in the stomach.

The witnesses also saw Willie stabbing or slashing Lattimore with a broken beer bottle. Luckett and McBeath both were unsure where Willie stabbed Lattimore, but Roebuck stated it was in Lattimore's chest. The autopsy report, which was admitted into evidence but not made part of the record on appeal, apparently indicated that Lattimore suffered three wounds from which he died. The record before us does not reflect the location of these wounds, although at trial both the State and defendants agreed that Lattimore sustained no wounds to his back.

Luckett and Roebuck pulled the Veal brothers away from Lattimore. Roebuck testified that when he went to help Lattimore, Jessie cut him with a knife. Lattimore escaped while Luckett and Roebuck continued to fight with the Veal brothers. At trial, McBeath, Luckett and Roebuck each admitted having used drugs on prior occasions.

Chicago police officer David Snethen (Snethen) testified that he was "flagged down" by Lattimore, and Snethen noticed that Latti-

more was bleeding. Snethen then heard someone yell "he's getting away" and observed Jessie running into a vacant lot. He apprehended Jessie and brought him back to where Lattimore was lying. Snethen asked Lattimore if Jessie had stabbed him. On the basis of Lattimore's answer, Snethen arrested the defendants. Snethen estimated that a crowd of approximately 100 persons had gathered at the scene. Lattimore later died from his wounds.

Chicago police officer Roy Dahlberg twice interviewed Willie and Jessie at the police station. The defendants related similar accounts regarding their attempted purchase of pills and the subsequent fight. Jessie told Dahlberg that he kicked Lattimore and knocked him to the ground, but he denied using a knife. Furthermore, Jessie told Dahlberg that he heard someone in the crowd accuse him of stabbing Lattimore, but Jessie did not respond to that accusation.

Louis Veal testified that he and the Veal brothers met Aubie McBeath and then went to the intersection of Lawndale and Roosevelt. Louis remained in the car while McBeath and the Veals talked with Luckett. Following the first argument between the Veals and Luckett, McBeath got into the car but left when Roebuck, Luckett and Lattimore approached and threw sticks and rocks at the car. Louis was "scared" and also got out of the car. He testified that nine or 10 men closed in on Willie and Jessie and that a fight broke out which was observed by more than 50 persons. Louis saw Willie and Jessie using their hands and feet to fight, but according to Louis, neither brother had a weapon. Not until after the police arrived the second time did Louis see any injured person.

Jessie Veal testified that he and his brother gave McBeath money for "T's and Blues." When Fox did not return, they went looking for him. McBeath directed the Veals to Roosevelt and Lawndale where McBeath spoke privately with Luckett. Jessie pushed McBeath into Louis' car because McBeath said that he would take the Veal brothers to Fox' house. At this point Luckett, Lattimore and Roebuck started throwing bricks and rocks at the car and McBeath jumped out and hit the car with a piece of pipe. Willie, Jessie and Louis also got out of the car. When the other men started beating Willie, Jessie jumped into the fight. When Willie suffered a cut on his hand, the two brothers ran towards Independence Boulevard, chased by Luckett, Lattimore and Roebuck who were again throwing bricks at them. Two other men joined the fray and a second fight started at Independence Boulevard. Jessie testified that neither he nor his brother used a knife or a bottle but used their hands and feet only since both of them were skilled in karate. Willie Veal did not testify.

The trial court found both defendants guilty of voluntary manslaughter, Willie being convicted on the basis of accountability. The court found Jessie guilty also of one count of aggravated battery. Jessie was sentenced to serve two concurrent terms of three years and four months in the Department of Corrections. Willie was also sentenced to serve three years and four months.

## I

Defendant Jessie Veal contends the trial court's refusal to provide free investigative services to his court-appointed counsel denied him several constitutional rights. Defendant argues that his right to the effective assistance of counsel was denied because counsel could not fulfill his duty to investigate; that his right to compel witnesses to testify on his behalf was impaired because he was unable to identify and to question witnesses crucial to his defense; and that he was denied equal protection under the law because, unlike an indigent defendant represented by the Public Defender's Office, an indigent represented by court-appointed counsel does not have access to free investigative services. The defendant also contends that the statute authorizing compensation for court-appointed attorneys representing indigent defendants (Ill. Rev. Stat. 1979, ch. 38, par. 113—3) should be construed as authorizing payment for investigative services.

The State responds that indigent defendants do not have a constitutional right to free investigative services; that the defendant's right to equal protection was not violated because Jessie had the opportunity of cooperating with the Public Defender's Office and their investigators who worked on behalf of his brother Willie; and that section 113—3 of the criminal code does not provide for free investigative services.

■ Initially, we note that in other jurisdictions there are differing opinions as to an indigent defendant's constitutional right in a criminal case to be provided with free investigative services. Compare *Mason v. Arizona* (9th Cir. 1974), 504 F.2d 1345 (providing that free investigative services may be necessary to ensure that an indigent defendant is not denied effective assistance of counsel) with *Watson v. Patterson* (10th Cir. 1966), 358 F.2d 297 (contra); see Annot., 34 A.L.R.3d 1256 (1970), and supplementary cases for a thorough discussion of the cases involving free investigative assistance.

The Illinois Supreme Court, in *People v. Watson* (1966), 36 Ill. 2d 228, 221 N.E.2d 645, considered the related issue of free "expert" assistance. The court held that an indigent defendant had a right to free expert assistance where expert assistance is deemed by the trial judge

to be necessary to prove a crucial issue. (36 Ill. 2d 228, 234.) In addition, the defendant must show that the lack of funds necessary to employ the expert will prejudice the defendant. *People v. Glover* (1971), 49 Ill. 2d 78, 82-83, 273 N.E.2d 367.

Illinois' recognition of an indigent defendant's constitutional right to free *expert assistance* in certain circumstances does not suggest that a similar right exists for free *investigative services*.[1] At oral argument, both parties advised the court they have been unable to find any Illinois cases that deal with the issue of free investigative services for indigent defendants.

While we have found no case directly on point, we note the case of *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387. In *Walker*, the defendant was convicted of the attempted murder of an Illinois State trooper. The defendant claimed the gun he was carrying discharged accidentally when he fell; that the bullet struck him in the thigh and then ricochetted off of an unknown surface before wounding the officer. (53 Ill. 2d 485, 488-91.) Prior to trial, the defendant asked the court to appoint a Lake County deputy sheriff as a special investigator to retrieve certain evidence which the defendant had concealed and to search for other evidence concerning the defendant's gun. The motion was denied. The defendant also moved for free expert assistance of a weapons expert and of a physician skilled in gunshot wounds. The trial court determined that the evidence of the weapons expert was important to the defendant's defense theory and granted the motion as to that expert. The motion was denied as to the physician. 53 Ill. 2d 485, 494-95.

The Illinois Supreme Court ruled that the trial court properly denied both the appointment of an investigator and of the physician under the standards set out in *Watson*. The court determined that neither the appointment of the investigator nor the physician was "sufficiently related" to the defendant's theory of defense, and there was, therefore, no showing of an unconstitutional denial of expert assistance. (53 Ill. 2d 485, 495.) While the court did not state what circumstances may entitle an indigent defendant to free investigative

---

[1]We believe a distinction must be made between expert assistance and investigative services. "Expert assistance" refers to the services of a person with special knowledge or expertise in a technical aspect of the defendant's case, *e.g.*, a psychiatrist in a case where the defendant is pleading insanity. "Investigative services" refers to the gathering of physical evidence or the locating and interviewing of occurrence witnesses. In the latter instance, it is not essential that the investigator possess any special knowledge or training. A relative or friend of the defendant might as effectively serve the purpose of an investigator.

services, the court applied the same analysis it had employed in *Watson*. By analogy, *Walker* appears to suggest that (1) where necessary to prove a crucial issue and (2) where the lack of funds necessary to provide investigative services will substantially prejudice the defendant, a constitutional right to such services may be established.

■ In the case *sub judice*, we find that Jessie Veal has failed to establish a need for the court's providing of an investigator. At the time of the crime, there were between 50 and 100 persons present. None of the State's occurrence witnesses, who were friends of the victim and were involved in the fight, testified as to how the fight began. The defendant wanted to locate unknown persons who may have witnessed the start of the altercation between the victim and the Veal brothers.

It is apparent that, unlike *Walker*, the defendant did not seek appointment of an investigator to find physical evidence alleged to exist. Rather, the investigator was to locate and identify other *possible* occurrence witnesses. Whether any such witness existed or would have been helpful to defendant's theory of the case is mere speculation.

We note that despite the denial of an investigator, Jessie Veal was able to present his self-defense theory at trial. The defendant testified in his own behalf and his testimony was supported by that of his cousin Louis. Officer Dahlberg related the accounts Jessie and Willie gave to him, and these accounts were consistent with Jessie's defense. In sum, there was no showing that denial of an investigator prevented Jessie Veal from presenting his case.

Even assuming, *arguendo*, that the need for an investigator in this case was not mere speculation, we do not find a sufficient showing that Jessie was deprived of any crucial investigation. The assistant public defender representing Willie Veal stated at trial that he had directed his investigators to concentrate their efforts on Willie Veal because of a *potential* conflict of interest between Willie and Jessie. However, there was no showing of an *actual* conflict, and we find no evidence to such effect.

The record before us does not indicate when the Public Defender's investigation took place. There was a period of approximately six months between the naming of the Public Defender's Office to represent Jessie Veal and the substitution of his court-appointed attorney. We do not know, and we cannot speculate what investigation took place during such period nor do we know whether Jessie Veal asked for or received investigative services from the Public Defender's Office. Further, we do not know what investigative efforts were made by Jessie's new counsel between the date of his appointment and the

date, approximately three months later, when counsel made his motion for appointment of an investigator. The record also does not reflect any discovery undertaken by Jessie's court-appointed counsel. Finally, it would seem reasonable to assume that an effort could have been made by the Veals' friends or relatives to locate additional witnesses. At oral argument, counsel for defendant contended that the ordinary person would not possess the skill or training to know what questions to ask. Any person, however, should be able to *attempt* to locate a potential witness. In such case, a report could be made to the attorney who could then conduct a more thorough interview. The record before us does not persuade us that the defendant was denied access to essential investigation.

■ The defendant also raises an equal protection argument. He argues that the denial of investigative services to him was unjust discrimination because a defendant represented by the Public Defender would have received such assistance. Again, there is no showing that defendant was denied access to any investigation made by the Public Defender's Office.

Jessie also argues that he was denied equal protection in this case because the very same court-appointed attorney who represented Jessie Veal in *this* case requested and received $250 for investigative services in *another* case where that attorney represented a different indigent defendant. (People v. Jacobs, Circuit Ct. No. 78—I—2773.) That free investigative services may have been granted in an unrelated case does not establish that such services are necessary in each case or in this case wherein counsel has failed to show the need for an investigator. We conclude that defendant's right to equal protection was not violated in this case.

■ Finally, Jessie Veal argues that the statute authorizing compensation for court-appointed attorneys (Ill. Rev. Stat. 1979, ch. 38, par. 113—3) should be interpreted so as to include expenses for investigative services. The statute provides that court-appointed counsel shall receive a reasonable fee for his services based on prescribed hourly rates with a maximum amount of $150 in misdemeanor cases and $1,000 in felony cases (Ill. Rev. Stat. 1979, ch. 38, par. 113—3(c)). Section 113—3(c) continues:

> "*** [I]n addition to expenses reasonably incurred *as hereinafter in this Section provided*, except that, in extraordinary circumstances, payment in excess of the limits herein stated may be made if the trial court certifies that such payment is necessary to provide fair compensation for protracted representation." (Emphasis added.)

Subsection (d) of section 113—3 provides for payment of expert witnesses in capital cases, and subsection (e) states that in counties of 1,000,000 or more, an indigent defendant may be entitled to general trial expenses not exceeding $50 for each defendant.

The defendant argues that "expenses reasonably incurred" should be interpreted as including investigative services. However, he overlooks the statutory proviso "expenses reasonanbly incurred *as hereinafter in this Section provided.*" (Emphasis added.) Where the language of the Act is certain and unambiguous, the function of the courts is to enforce the law as enacted by the legislature. (*Certain Taxpayers v. Sheahen* (1970), 45 Ill. 2d 75, 84, 256 N.E.2d 758.) Nowhere does the statute provide for investigative services.

The defendant argues that section 113—3 is modeled after its Federal counterpart, 18 U.S.C. sec. 3006A(d) through (e). While the Federal statute expressly provides for investigative services, the Illinois statute does not. Where a State statute expresses an intent to the contrary, the State statute precludes the application of the Federal court interpretation. (34 Ill. L. & Prac. *Statutes* sec. 135 (1958).) Since section 113—3 does not expressly provide for investigative services, any reliance on the Federal statute (or cases construing it) is misplaced. We must assume that our legislature was aware of the provisions of the Federal statute, but chose to omit investigative services.

The defendant also argues that the section of the statute which allows "fair compensation" in addition to the statutory maximum legal fee should be interpreted so as to include investigative services. Although our supreme court has held that reasonable compensation should include overhead and other expenses (*People v. Johnson* (1981), 87 Ill. 2d 98, 105, 429 N.E.2d 497) and "fair compensation" as used in the statute may include the services of legal personnel (*People v. Atkinson* (1977), 50 Ill. App. 3d 860, 866, 366 N.E.2d 94), it is our opinion that where the need for an investigator is not firmly established, a defendant is not entitled to free investigative services. We find no error in the trial court's denial of defendant Jessie Veal's motion for free investigative services.

## II

In his appeal, Willie Veal contends that he was not proved guilty beyond a reasonable doubt of voluntary manslaughter. Willie avers that the State's occurrence witnesses testified that Willie hit Lattimore in the back whereas the medical examiner found no wounds in the back. He cites *People v. Lindsey* (1979), 73 Ill. App. 3d 436, 392

N.E.2d 278, in which multiple convictions of a defendant were reversed partly because the testimony of the State's witnesses was contradicted by the autopsy report. In the instant case, the medical examiner's report was admitted into evidence but is not part of the record on appeal. At trial, however, both the State and the defendants agreed that the medical examiner's report did not indicate any wounds to Lattimore's back. While the three occurrence witnesses disagree as to where Willie struck the victim, a review of the record indicates that, contrary to Willie's assertions, none of them testified that Willie hit the victim in the back. Thus, none of the testimony conflicts with the medical examiner's report.

Willie also argues that his claim of self-defense was not contradicted by the physical or medical evidence, and that the only evidence to the contrary was provided by the three occurrence witnesses who were friends of the deceased and were former drug users.

■ However, Willie was found guilty on the theory of *accountability* and not of voluntary manslaughter *directly*. To prevail on a charge by accountability, the State must prove beyond a reasonable doubt that: (1) the defendant aided, abetted, solicited, agreed or attempted to aid another person in the planning or commission of the offense; (2) the participation must have taken place either before or during the commission of the offense; and (3) it must have been with the concurrent and specific intent to promote or facilitate the commission of the crime. *People v. Ware* (1980), 82 Ill. App. 3d 297, 306, 402 N.E.2d 762.

On the evidence presented, the trial court could well have concluded that Willie Veal should be held accountable for voluntary manslaughter. The accounts of the three occurrence witnesses are consistent in that a fight occurred between themselves and the Veal brothers. They each testified that during the fight, Jessie Veal stabbed the victim with a knife and Willie Veal hit the victim with a broken beer bottle. Thus, there is evidence that Willie Veal acted in concert with his brother and thereby helped facilitate his brother's crime.

While it may be that there were minor inconsistencies in the testimony of the three occurrence witnesses and that such witnesses were friends of the decedent and were drug users, such facts go to the credibility of the witnesses. The weight to be accorded such testimony is within the province of the trial court sitting as the trier of fact. (*People v. Coulson* (1958), 13 Ill. 2d 290, 295-96, 149 N.E.2d 96.) On review, the appellate court will not substitute its judgment for that of the trial court. (13 Ill. 2d 290, 296.) A conviction will be reversed only where the evidence is so improbable as to create a reasonable doubt

of the defendant's guilt. (*People v. Gasner* (1979), 79 Ill. App. 3d 964, 973, 398 N.E.2d 1122.) Our examination of the record in this case does not indicate that the evidence is so improbable, and we conclude that Willie Veal was proved guilty beyond a reasonable doubt of voluntary manslaughter.

For the foregoing reasons the judgments of the circuit court of Cook County are affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.