**Walter STEWART, Petitioner,**

v.

**Howard PETERS, III, Warden, Pontiac Correctional Center, Respondent.**

No. 89 C 8761.

United States District Court,
N.D. Illinois,
Eastern Division.

March 9, 1995.

David Carl Thomas, Chicago–Kent College of Law, Illinois Institute of Technology, Chicago, IL, for petitioner.

Terence Madsen, William P. Pistorius, Illinois Atty. General's Office, Renee Goldfarb, Cook County State's Atty., Chicago, IL, for respondent.

Terence Madsen, Illinois Atty. General's Office, Chicago, IL, for Neil F. Hartigan.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the petition of Walter Stewart ("Stewart") for habeas relief under 28 U.S.C. § 2254. For the following reasons, the petition is denied.

## I. BACKGROUND

The Circuit Court of Cook County sentenced Stewart to death for two murders, an attempted murder, and other violations committed during a February 10, 1980, armed robbery of a jewelry store. He is currently under the supervision and custody of the Illinois Department of Corrections. The underlying facts describing the murders and armed robbery and the subsequent state court proceedings leading to the death penalty are fully detailed in the opinions of the Supreme Court of Illinois. *See People v. Stewart*, 101 Ill.2d 470, 79 Ill.Dec. 123, 463 N.E.2d 677 (1984); *see also People v. Stewart*, 123 Ill.2d 368, 123 Ill.Dec. 927, 528 N.E.2d 631 (1988). Accordingly, the court will not duplicate those facts.

On November 27, 1989, Stewart filed the instant petition for habeas relief pursuant to 42 U.S.C. § 2254. Subsequently, Stewart filed an Amended Petition for habeas relief ("Petition"). On January 24, 1991, Respondent Howard Peters, III ("Respondent") filed his answer and supporting memorandum of law in response to the Petition. On March 15, 1991, Stewart filed his reply brief in further support of his Petition.

On July 19, 1991, the court granted the Petition. *Stewart v. Peters*, 770 F.Supp. 416, 417 (N.D.Ill.1991). The court determined that Stewart's general plea of guilty violated his due process rights under the Fourteenth Amendment because the record failed to affirmatively establish that his plea was voluntary and intelligent. In doing so, the court did not address the other issues Stewart raised in his Petition. On February 27, 1992, the Court of Appeals for the Seventh Circuit reversed, holding that the plea proceeding did not violate the Fourteenth Amendment. *Stewart v. Peters*, 958 F.2d 1379, 1388 (7th Cir.1992). On April 17, 1992, the Seventh Circuit modified its decision to remand the case for further proceedings in this court upon learning that Stewart had presented alternative grounds for seeking habeas relief from his petition for rehearing. *Id.*[1] Accordingly, the court now addresses those alternative grounds for habeas relief.[2]

---

1. Claims I and II of Stewart's Petition concerned whether his guilty plea was made voluntarily and intelligently. The Seventh Circuit having ruled that the plea was voluntary and intelligent, the only remaining claims for this court are III through XVI.

2. After remand, Stewart filed a supplemental memorandum of law in support of his Petition for habeas relief. Thereafter, respondent filed his responsive brief and Stewart filed his reply. The Petition became fully briefed and ripe for resolution. Nonetheless, the court did not be-

## II. DISCUSSION

### A. Denial of Request for Psychiatric Examination

During the state court proceedings, when the State requested that a death penalty hearing be held, defense counsel requested that a presentence report be prepared and that, as part of the report, a mental examination of Stewart be performed. The judge granted the request for a presentence report; however, he denied the request for a mental examination. Stewart contends that the denial of his request for a mental examination denied him of his right to due process under Fourteenth Amendment, and his right to a reliable death sentence determination under the Fourteenth and Eight Amendments.

### 1. Due Process and Eighth Amendment Right to a Reliable Death Sentence Determination

■ The Supreme Court determined in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), that due process requires an indigent defendant be provided with the aid of a psychiatrist for the purpose of presenting mitigation evidence in a death penalty case if the defendant is able to make a threshold showing that his mental condition is a serious issue. *Ake*, however, was decided in 1985, after the Illinois Supreme Court affirmed Stewart's conviction and death sentence on February 22, 1984, and the United States Supreme Court denied his petition for certiorari on October 15, 1984. According to *Teague v. Lane*, 489 U.S. 288, 309, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989), a habeas petitioner cannot get the benefit of decisions establishing new constitutional rules if the decisions were issued after direct appellate review of his case. Here, *Ake* established a new rule of constitutional criminal procedure and it does not fall within either of the two exceptions outlined in *Teague*.[3] *Bassette v. Thompson*, 915 F.2d 932, 939 (4th 1990); *see also Harris v. Vasquez*, 949 F.2d 1497, 1518–22 (9th Cir.1990) (holding that a similar rule allowing a petitioner to challenge the competence of a defense psychiatrist on collateral review could not be applied retroactively under *Teague*). Thus, because *Ake* was decided after Stewart's conviction became final, *Teague* bars him from getting the benefit of the new rule.[4]

Moreover, Stewart has not established a valid claim under *Ake* in any event. At the time that counsel made the request for a mental examination, there was nothing in the record that arguably put Stewart's mental condition at issue. Furthermore, nothing in Stewart's Petition supports his argument

---

come aware of this fact until the parties appeared in open court on October 14, 1994, pursuant to the court's October 4, 1994, minute order. At the status hearing, Respondent's attorney was quick to alert the court that she had been waiting for a decision on this matter from this court. The court recognizes the delay in resolving the remaining issues in this case. Numerous interim minute orders have been entered in this case. However, counsel genuinely concerned about delay, could have brought the matter to the court's attention pursuant to Local Rule 12(Q) of the United States District Court for the Northern District of Illinois or could have filed a writ of mandamus pursuant to 28 U.S.C. § 1651 ordering this court to expedite its decision. *Hirsch v. Burke*, 40 F.3d 900, 905 (7th Cir.1994). But at no time during this delay did counsel for respondent file such a writ, or alert the court pursuant to Rule 12(Q). No prejudice has occurred to the defendant by the delay.

**3.** According to *Teague*, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.... [or] if it requires the observance of those procedures that ... are implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073 (quotations and citations omitted).

**4.** In his petition, Stewart cites to *Lockett v. Ohio*, 438 U.S. 586, 599–602, 98 S.Ct. 2954, 2962–63, 57 L.Ed.2d 973 (1978), in which the Supreme Court held an Ohio statute unconstitutional because it did not allow consideration of mitigating factors, such as the defendant's character and prior record, in capital cases. *Lockett* is not applicable here because there was no statutory impediment restricting the judge from considering such evidence in mitigation. Furthermore, while Stewart does not cite to *Ake* in his Petition, any argument that he was denied the right to have a psychiatrist to aid in presenting mitigation evidence must be grounded on *Ake*, for *Lockett* does not support such a claim. Moreover, Stewart has recently cited to additional authority in support of this argument, *Parker v. Norris*, 859 F.Supp. 1203 (E.D.Ark.1994), which grants a habeas petition based on *Ake*, thereby indicating that his argument is, indeed, based on *Ake*.

that a psychological examination would have revealed significant mitigating evidence. The Petition contains no evidence whatsoever that Stewart was, at the time of the crime, or is now, suffering from any sort of mental illness, defect, or disability. Simply put, his mental condition was not, and is not, an issue.[5] *See Branscomb v. Norris*, 47 F.3d 258 (8th Cir.1995) (denying a habeas petition because petitioner had not presented trial court with evidence placing his sanity or mental functioning seriously in issue). Accordingly, the trial court did not violate his Fourteenth or Eight Amendment rights when it denied his motion for a mental examination.

### 2. Equal Protection

■ Stewart contends that the trial court's denial of his motion for a mental examination violated his rights under the Equal Protection Clause of the Fourteenth Amendment because he was financially unable to pay for an examination which a wealthy defendant would have been able to afford. However, as discussed above, Stewart has not established that his mental condition was seriously in issue at the time of the trial and, therefore, cannot establish that he was prejudiced by the denial of a mental examination.

### B. Ineffective Assistance of Counsel

■ Stewart asserts that he was denied effective assistance of counsel by his trial counsels'[6] failure to request funds for obtaining a psychological examination pursuant to 725 ILCS 5/113–3(d) (1993),[7] by trial counsels' failure to insure that the court had an accurate picture of his delinquency and criminal history, and by trial counsels' failure to present evidence of his drug addiction, his character, and life history as mitigation evidence. To establish a claim for ineffective

assistance of counsel, a petitioner must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In reviewing an ineffective assistance of counsel claim, the court is highly deferential to trial counsel's performance, and the petitioner must "overcome the presumption that the challenged action or inaction could not fall within the broad range of sound trial strategy." *United States v. McKinley*, 23 F.3d 181, 185 (7th Cir.1994).

### 1. Counsel's Failure to Request Funds Pursuant to Section 113–3(d)

■ Stewart's contention that trial counsel were ineffective for failing to request funds under Section 113–3(d) is meritless. In Illinois, an indigent defendant may be entitled to funds to pay for an expert witness if the expert testimony is deemed crucial to an adequate defense. *People v. Clay*, 19 Ill. App.3d 296, 311 N.E.2d 384, 386 (2d Dist. 1974); *People v. Veal*, 110 Ill.App.3d 919, 66 Ill.Dec. 679, 684, 443 N.E.2d 605, 610 (1st Dist.1982). After the trial court had denied Stewart's request for a mental examination pursuant to 730 ILCS 5/5–3–2(b) and 730 ILCS 5/5–3–3 (1993),[8] it was reasonable for counsel to assume that a request for funds for an expert to perform a mental examination pursuant to Section 113–3(d) would also be denied. This decision was a matter of trial strategy. Furthermore, as discussed above, Stewart cannot show prejudice from the denial of a mental examination because he has produced no evidence showing that his mental condition was ever seriously at issue.

---

**5.** Stewart has submitted a report by Chandra J. Walker, a "Mitigation Specialist," which suggests that Stewart may have had a difficult childhood and may have had a drug problem. However, Ms. Walker's report does not come to the conclusion that Stewart was suffering from any mental disability at the time of the crime, or that he is now. Furthermore, even if it did, the court would disregard it since Ms. Walker is not qualified to make psychological or psychiatric evalua-

tions. She does not have a degree, advanced or otherwise, in psychology or psychiatry.

**6.** Stewart had two court appointed attorneys at trial.

**7.** Formerly, Ill.Rev.Stat. ch. 38, para. 113–3(d).

**8.** Formerly, Ill.Rev.Stat. ch. 38, para. 1005–3–2(b) and 1005–3–3.

### 2. Counsels' Failure to Insure that the Court Had an Accurate Picture of Stewart's Delinquency and Criminality

■ Stewart contends that trial counsel failed in their duty to insure the accuracy of information received by the court regarding Stewart's prior criminal record. As a consequence, Stewart asserts that the judge sentenced him based on a mistaken view of his criminal history. This is simply not the case. A review of the sentencing transcript reveals that the judge properly considered the totality of Stewart's prior criminal history, which is extensive, and considered all the mitigating and aggravating factors required under Illinois' death penalty statue, 720 ILCS 5/9–1 (1993),[9] in making his sentencing determination.

During sentencing, the judge listed the history of Stewart's offenses contained in the presentence report. Among the offenses listed, the judge incorrectly stated that Stewart had been adjudicated delinquent for robbery in 1969 and convicted of theft as an adult in 1973. More accurately, the 1969 juvenile petition was disposed of by placing Stewart on probation, and the 1973 arrest for theft led to a 1974 disposition of adult supervision.

The Respondent does not contest that the judge's statements regarding these incidents were factually inaccurate. However, it is clear that the judge could properly consider the criminal conduct underlying those offenses regardless of the final disposition of the cases. United States v. Fonner, 920 F.2d 1330, 1333 (7th Cir.1990); United States v. Plisek, 657 F.2d 920, 928 (7th Cir.1981); People v. Gromm, 164 Ill.App.3d 236, 115 Ill.Dec. 310, 312, 517 N.E.2d 721, 723 (3d Dist.1987). Furthermore, notwithstanding the two contested offenses, Stewart's prior criminal history is impressive. As the trial judge noted, he was adjudicated delinquent for two armed robberies with a zip gun and a sixteen inch bayonet in 1970. (R. at 670.) In 1975, he was given a one year conditional discharge for unlawful use of a weapon. (R. at 671.) In 1977, he received two years probation and forty-five days in custody for burglary. In 1979, he received another one-year conditional discharge for unlawful use of a weapon,

and not long before the murders, he received a three-year sentence for burglary. Id. Thus, it ignores reality to contend that the judge based his sentencing on a material misconception of Stewart's criminal history.

Stewart's reliance on Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948) is misplaced. In Townsend, the petitioner was sentenced to between ten and twenty years based upon his guilty plea to burglary and robbery charges. During sentencing, the court relied on a list of offenses with which the petitioner had been charged in determining his prior criminal history. However, of the offenses listed by the court, the petitioner had actually been acquitted of two, and a third charge had been dismissed, resulting in the petitioner's discharge. The Court held that the petitioner's right to due process had been violated because he was sentenced on the basis of "assumptions concerning his criminal record which were materially untrue." Id.

In the case at bar, it cannot be said that the court based its sentence on materially untrue assumptions. Stewart's criminal history, even absent the two contested charges, was extensive. Furthermore, that the judge considered a juvenile robbery and an adult theft as adjudications of delinquency and conviction respectively is not significant considering that the judge could properly consider the criminality of the underlying actions regardless of the final disposition of the cases. Moreover, unlike Townsend where the petitioner had actually been acquitted of two of the charges relied upon by the trial court in sentencing, Stewart does not contend that he did not commit the burglary in 1969 or the theft in 1973. Thus, in Townsend, the court's assumptions about the petitioner were materially untrue because he had been acquitted. In Stewart's case, the mistaken assumption of the trial judge only goes to the final disposition of the case and not to whether Stewart committed the crimes. Therefore, the trial court's assumptions about Stewart's "proclivity for crime" (R. at 670) were not materially untrue.

9. Formerly, Ill.Rev.Stat., ch. 38, para. 9–1(d).

In addition to all of the above, a review of the sentencing proceedings reveals that the judge "[e]valuate[d] the totality of the evidence," (R. at 670), applied the statutory factors for mitigation in capital cases, (R. at 672), and the statutory factors for mitigation in non-capitol cases. (R. at 673.) Most tellingly, the judge, borrowing an Assistant State's Attorney's phrase, described the two murders as "a tale of horror with unbridled violence." (R. at 671.) The judge also noted that "had it not been for this defendant's avarice and greed this might have been an unsolved armed robbery. However, his second re-entry into that jewelry store for the expressed purpose of getting more merchandise that lead to the unwarranted killings and untimely deaths of two young men. There can be no possible justification for those acts." *Id.* Given all of this, Stewart has not shown that but for his trial counsels' failure to apprise the judge of the two errors regarding the 1969 robbery and 1973 theft, he would not have been sentenced to death.

### 3. *Failure to Conduct a Thorough Mitigation Investigation*

Stewart also alleges that his trial counsel were ineffective for failing to adequately investigate and present evidence of his history of drug abuse. In addition, Stewart contends that trial counsel were ineffective for failing to investigate and present mitigating evidence of his character and history. Because these two claims present distinct analytical problems, the court will address them separately.

#### i. *Drug Abuse*

■ In the presentence report, having pleaded guilty to murder and other felonies, Stewart stated that he had a "drug problem" and wished to participate in a drug abuse program. Stewart asserts that counsels' failure to pick up on this statement and conduct an investigation and present evidence of drug abuse to the trial court at sentencing constituted ineffective assistance. Stewart's contention that this conduct on counsels' part was the result of dereliction, as opposed to

strategic consideration, is mere assertion on his part. There is no guarantee that the trial court would have considered drug addiction a mitigating factor, and trial counsel may fairly have concluded that the court would have considered it an aggravating one. *See People v. Smith,* 214 Ill.App.3d 327, 158 Ill.Dec. 671, 680, 574 N.E.2d 784, 793 (2d Dist.1991); *People v. Bohlander,* 225 Ill.App.3d 1055, 168 Ill.Dec. 25, 27, 589 N.E.2d 139, 141 (3d Dist. 1992). Furthermore, presenting evidence that Stewart was a drug addict with a one hundred dollar per day heroin habit may have opened the door to proof of criminal behavior required to support such a habit beyond the numerous crimes already listed in the presentence report.[10] *See Darden v. Wainwright,* 477 U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (noting that any attempt to portray petitioner as nonviolent may have opened the door to evidence of prior convictions). Given the potentially damaging nature of such evidence, counsels' decision to not fastidiously investigate the extent of Stewart's drug habit and related behavior cannot be considered ineffective assistance of counsel.

Furthermore, Stewart has not demonstrated that but for counsels' failure to present additional evidence of drug abuse, the result of the sentencing hearing would have been different. As Stewart indicates, the presentence report contains a statement that he had a drug problem and wanted to participate in a drug abuse program. The trial judge had the presentence report before him, and it is clear from his statements that he read and considered all of the information in the report carefully. The judge stated, "I have considered the presentence investigation report and I have indulged in many hours of reflective introspection seeking to find some factors in mitigation." (R. at 672.) Hence, the judge was apprised of Stewart's drug problem and presumably considered it when searching for mitigating factors. In light of the judge's determination that it did not find any evidence sufficiently mitigating to preclude imposition of the death penalty, it

---

10. The evidence of a one hundred dollar per day drug habit comes from Ms. Walker's affidavit. (Pet. Ex. B at 6.) The affidavit also asserts that

Stewart did support himself through criminal activity, primarily robberies. (Pet. Ex. B at 5.)

is pure speculation that the introduction of additional evidence of drug abuse would have swayed the judge. Accordingly, Stewart has not established that his trial counsel were ineffective for failing to present additional evidence of his unlawful use of drugs.

### ii. *Character and History*

■ Stewart's contention that his trial and post-conviction counsel were both ineffective for failing to investigate and develop mitigating evidence relating to his character and life history cannot form the basis of habeas relief. First, there is no constitutional guarantee to post-conviction representation. *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Therefore, there can be no constitutional right to effective post-conviction counsel, *Prihoda v. McCaughtry,* 910 F.2d 1379, 1386 (7th Cir.1990), and Stewart's claim based on his post-conviction counsel's performance must fail.

■ Second, Stewart's claim of ineffective assistance based upon trial counsels' failure to investigate and present mitigating evidence regarding his character and life history is barred because it was never raised in the Illinois courts [11] and, therefore, cannot be raised in federal court. *Sotelo v. Indiana State Prison,* 850 F.2d 1244, 1252 (7th Cir. 1988).

[10] Moreover, the claim is not well-founded. Stewart cites a litany of evidence that he contends was not presented that could have changed the outcome of the sentencing hearing. Much of the evidence was actually presented to the trial judge. For instance, Stewart's mother did testify that Stewart only lived with her for a year and one-half after he was born, and that he never knew his father. (R. at 603.) [12] She also testified that she was not, and had never been, very close to Stewart. (R. at 610.) The judge was also aware that Stewart's grandfather had recently died, and that Stewart was very upset by his death. (R. at 588.) [13]

The only potentially mitigating evidence that was not presented to the trial court is of the alleged mental illness of Stewart's grandfather, Harold Lewis ("Lewis"), who had raised Stewart for much of his childhood. Through affidavits of lay people (i.e., non-psychiatric experts), Stewart attempts to establish that Lewis became mentally ill in 1967. (*See,* Pet. Exs. B,D,G.) However, there is no evidence that Lewis was committed or received psychiatric care. Affidavits submitted many years after the fact from lay persons that Lewis was mentally ill are not persuasive in showing that this testimony would have effected the sentencing. Even if the trial court had taken the testimony as true, there is no showing of impact on Stewart. The testimony at sentencing and in the affidavits reveal that Stewart's relationship with Lewis was very close, and that Lewis loved Stewart and treated him very well. There is no testimony indicating that Lewis' behavior had any significant negative effects on Stewart from anyone qualified to make such a determination. Thus, even if counsel were delinquent in not presenting this evidence, Stewart has not shown that had it been presented the outcome of the sentencing hearing would have been different. Accordingly, Stewart's claim that he was denied effective assistance of counsel cannot form the basis of habeas relief.

---

11. *See People v. Stewart,* 101 Ill.2d 470, 79 Ill. Dec. 123, 134, 463 N.E.2d 677, 688 (1984); *People v. Stewart,* 123 Ill.2d 368, 123 Ill.Dec. 927, 528 N.E.2d 631 (1988); (Pet. Ex. K. at ¶ 5).

12. Stewart asserts that the he was abused as a child by his violent grandmother. However, the affidavit cited for support of this assertion, (Pet. Ex. B), makes no mention of abuse by his grandmother.

13. Stewart also contends that his trial counsel were derelict in their duty by failing to elicit testimony regarding the influence of his cousin, Geraldine Gay. This evidence would reveal that Stewart was impressed with Geraldine and her high style of living, financed through illegal activities. As a result of this influence, Stewart turned to a lifestyle involving drugs and crime. As discussed above, counsel cannot be deemed ineffective for failing to elicit testimony which would have brought to light significant criminal behavior; criminal behavior of which the court would not otherwise have been informed. *Darden v. Wainwright,* 477 U.S. at 186, 106 S.Ct. at 2474.

### C. The Trial Court's Reliance on the Presentence Report

■ Without a single citation to authority in his Petition or reply memorandum, Stewart contends that his Eighth and Fourteenth Amendment rights were violated because the presentence report was not made available to him prior to sentencing. The presentence report was available on August 5, 1980, and sentence was imposed on August 8, 1980.[14] The record shows that a copy was tendered to trial counsel at the beginning of the proceedings on August 6, 1990, the day the court heard evidence in mitigation and aggravation. Thus, the report was available to counsel, and to Stewart through counsel, so that they could challenge any information in it that day. Neither Stewart nor trial counsel objected to anything in the report. Moreover, Stewart had two additional days prior to sentencing to bring any errors to the court's attention. At sentencing, the court asked Stewart whether he had anything to say. Stewart responded, "No sir." Stewart had ample opportunity to comment on any factual inaccuracies or explain any of the information contained within the report. Therefore, no constitutional violation occurred. *See United States v. Brown,* 785 F.2d 587, 592 (7th Cir.1986) (holding that reversal was not required where defendant had an adequate opportunity to challenge the presentence report).

Stewart's assertion that he was never personally given a copy of the report does not further his cause. Stewart does not assert that counsel was ineffective for failing to discuss the report with him, and he has not presented any case law holding that tendering a copy of the presentence report to counsel and not to the defendant personally is constitutionally insufficient. Moreover, as discussed above in section II.B.2, any inaccuracies within the report were insignificant. Thus, even if he had not been given an opportunity to see the report, he is unable to establish that he was sentenced on the basis of information that was materially untrue.

*Cf. Townsend v. Burke,* 334 U.S. at 740, 68 S.Ct. at 1255.

### D. The Court's View of Stewart's Criminal History

■ Stewart's next contention is that the trial court based his sentence on a mistaken view of his criminal history in violation of his right to a reliable death penalty determination under the Eighth and Fourteenth Amendments. However, as discussed in section II.B.2 and II.C above, this is not the case. Among other things, the trial court based his death sentence upon the unbridled violence of the crime, Stewart's greed which lead to the violence, and Stewart's extensive criminal history. The judge could properly consider the criminal activity underlying Stewart's 1969 juvenile robbery and 1973 adult theft which lead to probation and supervision respectively. The fact that the judge mistakenly thought that those two events resulted an adjudication of delinquency and a conviction respectively is not significant in light of the underlying criminality of the conduct, which the judge could properly take into account, *United States v. Fonner,* 920 F.2d at 1333; *United States v. Plisek,* 657 F.2d at 928; *People v. Gromm,* 115 Ill. Dec. at 312, 517 N.E.2d at 723, and Stewart's significant criminal history not including those events. Accordingly, Stewart's claim must fail.

### E. Weight Given to Mitigating Factors

■ Stewart asserts, without citation to anything in the transcript or to any legal authority, that the trial court erred in not giving the appropriate weight to mitigating factors presented at sentencing. Stewart contends that because the judge found no factors sufficiently mitigating to foreclose imposing the death penalty, he "erroneously concluded that absolutely no mitigation was present." (Pet. at 29.)

Contrary to Stewart's assertion, the record clearly reflects that the trial court considered all the evidence presented in aggravation and mitigation. He reviewed the presentence re-

---

**14.** Illinois law requires that a presentence report be available three days before sentence is imposed. 730 ILCS 5/5-3-4. The Illinois Supreme Court determined that this section was complied with in Stewart's case. *People v. Stewart,* 79 Ill.Dec. at 133, 463 N.E.2d at 687.

port, reread Stewart's statement, and examined the statutory factors for mitigation under the Illinois death penalty statute and those considered in noncapital cases. In addressing this argument, the Illinois Supreme Court stated:

> Because the judge concluded that there was "nothing to mitigate the offense committed here" does not mean, as the defendant asserts, that the judge failed to give weight or improperly weigh any factors in mitigation. The judge stated, "I have indulged in many hours of reflective introspection seeking to find some factors in mitigation.... I have searched my conscience and my soul and I cannot find any basis in law or in fact that would preclude the death penalty in this case." We do not agree with defendant that the record demonstrates that the judge did not consider or failed to appropriately weigh factors in mitigation.

*People v. Stewart,* 79 Ill.Dec. at 135, 463 N.E.2d at 689. Like the Illinois Supreme Court, this court finds that the record does not support Stewart's assertion. Accordingly, he is not entitled to relief based on his claim that the trial court failed to give proper weight to the mitigating evidence in the case.

### F. Right to Testify at Sentencing

█ Stewart's claim that his constitutional rights were violated because the trial court lead him to believe that by pleading guilty he had forfeited his right to testify in mitigation is not well founded for several reasons. First, the claim is barred because it was never raised in the Illinois courts. *Sotelo v. Indiana State Prison,* 850 F.2d at 1252. Second, at the sentencing, the court did ask Stewart whether he had anything to say. (R. 669.) Lastly, "there is no constitutional right to testify at one's own sentencing." *Milone v. Camp,* 22 F.3d 693, 704 (7th Cir.1994). Therefore, this claim cannot support habeas relief.

### G. Facial Attack on Illinois Death Penalty Statute

Stewart contends that the Illinois death penalty statute, 720 ILCS 5/9–1(d) (1993), is unconstitutional because it leaves the determination of whether to seek the death penalty up to the discretion of the prosecutor with no statutory guidelines to assist the prosecutor in exercising his discretion. Stewart also contends that the statute is unconstitutional because the prosecutor does not have to inform the defendant of the State's intention to seek the death penalty until after a conviction has been obtained. Both of these arguments have been rejected by the Seventh Circuit. *Silagy v. Peters,* 905 F.2d 986, 990–97 (7th Cir.1990). Accordingly, these arguments cannot form the basis of habeas relief.

### H. As Applied Attack on the Illinois Death Penalty Statute

█ Stewart contends that the lack of objective standards in the statute has resulted in an uneven and arbitrary application of the death penalty, resting largely on the views and biases of the one hundred and two county State's Attorneys in Illinois. Stewart has presented no evidence to support this argument and essentially restates the contentions made in Section II.G regarding prosecutorial discretion. Thus, he is not truly making an "unconstitutional as applied" argument.

Notwithstanding its label, the argument is without merit. As the Seventh Circuit noted in *Silagy,* the "prosecutor's decision under § 9–1(d) of the Illinois statute to commence or forego a death sentence hearing is not a decision to 'impose' the death sentence. Rather, the prosecutor's role is limited to that of initiating the proceedings." *Id.* at 993 (footnote omitted). The court also noted that the prosecutor's discretion is guided in each case by whether he can prove one of the eight statutory aggravating factors beyond a reasonable doubt as required by the statute. *Id.* at 993–94. In addition, by allowing the prosecutor to delay the decision to seek the death penalty until after a conviction has been obtained, the statute gives the prosecutor the opportunity to consider the evidence offered in the guilt phase in making his determination. *Id.* at 994. "Thus, like the sentencing authority's ultimate decision to impose the death penalty, the prosecutor's preliminary decision to seek the death sentence in a particular case will be guided not

only by the nature of the crime itself, but also by any individualized characteristics of the defendant which may come out during the course of the trial." *Id.* Accordingly, the court must reject Stewart's assertion that the statute is being applied in an unconstitutional manner.

### I. Racially Discriminatory Application of the Illinois Death Penalty Statute

▇ Stewart contends that the Illinois death penalty statute is applied in a racially discriminatory manner. He cites to a study by Samuel Gross and Robert Mauro, *Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization,* 37 Stan.L.Rev. 27 (1984). However, a statistical study suggesting that there is a racial disparity in the imposition of the death penalty is insufficient to demonstrate a constitutional violation. *McCleskey v. Kemp,* 481 U.S. 279, 298, 107 S.Ct. 1756, 1770, 95 L.Ed.2d 262 (1987); *Davis v. Greer,* 13 F.3d 1134, 1144 (7th Cir.1994). Accordingly, Stewart is not entitled to relief under this claim.

### J. Illinois Death Penalty Statute Does Not Require the State to Prove the Lack of Mitigating Factors Beyond a Reasonable Doubt

Stewart argues that the Illinois death penalty statute violates a defendant's Eighth and Fourteenth Amendment right to receive a reliable death penalty determination by failing to require that the State prove that there are no mitigating factors beyond a reasonable doubt. In *Silagy,* the Seventh Circuit held that placing the burden of persuasion on the defendant to show that mitigating factors sufficient to preclude imposition of the death penalty after the prosecution has already proved beyond a reasonable doubt that a statutory aggravating factor exists is constitutionally acceptable. *Silagy,* 905 F.2d at 998–99. Therefore, Stewart's Petition may not be granted pursuant to this claim.

### K. The Illinois Death Penalty Statute Lacks Comparative Review Procedure

Stewart's claim that the Illinois death penalty statute is unconstitutional because it does not provide for comparative appellate review procedures is also foreclosed by *Silagy. Id.* at 1000.

### L. The Illinois Death Penalty Statute Shifts the Burden of Proving the Existence of Mitigating Factors to Defendant

▇ Contrary to Stewart's assertion, the Illinois death penalty statue does not unconstitutionally shift the burden of proving the existence of mitigating factors to the defendant. *Id.* at 998–99.

### M. Ineffective Assistance of Appellate Counsel

Stewart contends that his appellate counsel was ineffective for failing to raise the constitutional challenge to the Illinois death penalty statute asserted in Section II.L above. Because the Seventh Circuit has rejected that challenge to the statute, *Id.,* Stewart cannot show prejudice from counsel's failure to raise the issue.

### N. Application of Stare Decisis to Uphold the Illinois Death Penalty Statute

▇ Stewart asserts that the application of *stare decisis* to uphold the death penalty statute violates the Eighth Amendment and the Supremacy Clause. In *People ex rel. Carey v. Cousins,* 77 Ill.2d 531, 34 Ill.Dec. 137, 397 N.E.2d 809 (1979), a four member majority of the Illinois Supreme Court upheld the constitutionality of the Illinois death penalty statute. Three Justices dissented. Subsequently, Justice Kluczinski, a member of the *Cousins* majority, retired, and was replaced with Justice Simon. In a dissenting opinion in *People v. Lewis,* 88 Ill.2d 129, 58 Ill.Dec. 895, 919–26, 430 N.E.2d 1346, 1370–77 (1982), Justice Simon expressed agreement with the three dissenters in *Cousins.* However, the *Cousins* dissenters, relying on *stare decisis,* voted to uphold the death penalty. *Id.,* 58 Ill.Dec. at 912–13, 430 N.E.2d at 1363–64. Stewart asserts that this application of *stare decisis* to uphold the death penalty violates the Eighth Amendment and the Supremacy Clause.

**1150**

Stewart does not support his assertion of constitutional infirmity with any analysis or citation to legal authority. Since every court in this country uses the doctrine of *stare decisis,* this court is hard pressed to understand how application of this doctrine implicates the Eighth Amendment or the Supremacy Clause. The Illinois Supreme Court held that the statute was constitutional in *Cousins,* 34 Ill.Dec. 137, 397 N.E.2d 809, and that case has not been overturned. Furthermore, the United States Supreme Court has not ruled to the contrary. Thus, Stewart has not made out a cognizable Eighth Amendment or Supremacy Clause challenge against the statute based upon the application of *stare decisis.* Accordingly, he is not entitled to habeas relief on this claim.

### III. CONCLUSION

For the foregoing reasons, Stewart's Petition for a Writ of Habeas Corpus is denied.

IT IS SO ORDERED.